FILED IN CLERK'S OFFICE
U.S.D.C. Rome

JAN - 5 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| BENNY and WANDA JACOBS, | CASE NO. _____ |
| Plaintiffs, | |
| v. | CLASS ACTION COMPLAINT |
| TEMPUR-PEDIC INTERNATIONAL, INC. and TEMPUR-PEDIC NORTH AMERICA, INC. | 4 07-CV- 002 |
| Defendants. | (JURY TRIAL DEMANDED) |

## CLASS ACTION COMPLAINT

Plaintiffs, on their own behalf and on behalf of all others similarly situated, bring this action for damages and injunctive relief. Plaintiffs state claims under the antitrust laws of the United States and demand a trial by jury.

Plaintiffs allege in support of their Complaint as follows:

### PRELIMINARY STATEMENT

1. The mattress industry has over $4 billion per year in sales. The two most popular types of mattresses are the traditional innerspring mattresses and the more recently developed foam mattresses. There are approximately $800 million per year in sales of non-traditional types of mattresses, such as foam mattresses.

2. Foam mattresses are relatively new to the marketplace. In the early 1970s, the National Aeronautic and Space Administration ("NASA") developed visco-elastic memory foam. This foam is temperature sensitive and both resists change of shape (viscous) and returns to its original shape after being forced to change (elastic). NASA released this technology to the public.

3. Tempur-Pedic International, Inc., along with its parents, subsidiaries, affiliates, and/or predecessor companies (collectively, "TPX"), further developed the foam technology with its own trade secrets and introduced its own version of the foam in 1991 for home and medical use. Today, TPX manufactures and sells a variety of products made of its visco-elastic foam, including premium foam mattresses.

4. Visco-elastic foam mattresses are generally much more expensive than traditional innerspring mattresses and typically cost in the thousands of dollars.

5. Given its unique attributes, the visco-elastic foam mattress market is either separate and distinct from the traditional innerspring mattress market or constitutes a relevant and distinct sub-market of the market for mattresses generally.

6. Upon information and belief, TPX has 80-90% of the sales in the visco-elastic foam mattress market.

7. Upon information and belief, TPX's Tempur-Pedic mattresses are sold at "full prices" because TPX requires distributors to agree: (1) to adhere to a minimum resale price set by TPX; and (2) not to discount on price.

8. Upon information and belief, at least one TPX distributor is permitted to discount on price, but only after receiving prior approval of the discount from TPX.

9. Upon information and belief, all of TPX's distributors conspired with TPX and agreed to sell, and do sell, at or above TPX's minimum resale price.

10. Upon information and belief, in addition to distributing its mattresses through third-party distributors, TPX also sells its mattresses directly to consumers, and sells them at the same prices at which it has agreed with its distributors to charge.

11. For these acts, Plaintiffs state claims for resale price maintenance, horizontal price fixing, and unreasonable restraints of trade against TPX, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

## JURISDICTION

12. Plaintiffs bring this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for treble damages and injunctive relief, as well as the costs of suit, including reasonable attorneys' fees. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367 and 15 U.S.C. §§ 15, 22, and 26.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) and 15 U.S.C. §§ 15, 22, and 26, in that the Defendants inhabit, transact business, reside, are found, or have an agent in this District.

## PARTIES

14. Plaintiffs Benny and Wanda Jacobs are citizens of Georgia, and reside at 5 Halbury Drive, S.W. in Rome, Georgia. Plaintiffs purchased a Tempur-Pedic mattress on November 7, 2005.

15. Defendant Tempur-Pedic International, Inc., is a Delaware corporation with its principal executive office at 1713 Jaggie Fox Way, Lexington, Kentucky 40511. Defendant Tempur-Pedic International, Inc., does business in Georgia through its wholly-owned subsidiary Tempur-Pedic North America, Inc. It is the leading global manufacturer, marketer, and distributor in the market for visco-elastic foam mattresses.

16. Defendant Tempur-Pedic International, Inc. has a number of subsidiaries and related entities.

17. Defendant Tempur-Pedic North America, Inc. (f/k/a Tempur-Pedic NA, Inc., f/k/a Tempur-Pedic Retail, Inc.) is a Delaware corporation with its principal executive offices at 1713 Jaggie Fox Way, Lexington, Kentucky 40511 and is registered as a foreign corporation to and conducts and transacts business in the State of Georgia. Tempur-Pedic North America, Inc. is a wholly-owned subsidiary of Tempurpedic International, Inc., and its registered agent in Georgia is CT Corporation System.

## CLASS ACTION ALLEGATIONS

18. Plaintiffs bring this action on behalf of themselves and, under Fed. R. Civ. P. 23(b)(2) and (b)(3), as representatives of a class made up of all persons and entities (excluding Defendants and their co-conspirators, their officers, directors, and employees, and governmental entities) who purchased Tempur-Pedic brand mattresses for delivery in the United States, at any time from January 5, 2003 to the present, directly from TPX or from an authorized distributor and/or their selling agents. This class seeks treble damages and injunctive relief under the United States antitrust laws.

19. Members of the class are so numerous and geographically dispersed that joinder of all members is impracticable, if not impossible. The exact number and identities of members of the class are unknown to the Plaintiff at this time, but its membership likely exceeds hundreds of thousands.

20. Plaintiffs will fairly and adequately protect the interests of the class. The interests of the Plaintiffs are coincident with, and not antagonistic to, the interests of the class.

21. Plaintiffs' claims are typical of the claims of the class. Defendants and their co-conspirators damaged Plaintiffs and all members of the class.

22. Plaintiffs are represented by experienced and able counsel who are experienced and competent in the prosecution of complex class action and antitrust litigation.

23. There are questions of law and fact common to all Class Members, including but not limited to:

   (a) whether distributors agreed with TPX on minimum resale prices for Tempur-Pedic brand mattresses;

   (b) whether distributors agreed with TPX to fix the price at which the distributors and TPX would sell Tempur-Pedic brand mattresses to consumers.

   (c) the identities of the parties to the agreements;

(d) the duration, extent, and success of the agreements to set minimum resale prices for Tempur-Pedic brand mattresses;

(e) the duration, extent, and success of the agreements to fix the price at which TPX and its distributors would sell Tempur-Pedic brand mattresses to consumers.

(f) whether the agreements violated the federal antitrust laws;

(g) whether an injunction should issue to prohibit TPX and its distributors from engaging in conduct in violation of the antitrust laws;

(h) whether and to what extent the conduct of TPX and its distributors caused injury to the class members;

(i) the appropriate measure of damages to the class members.

24.  Common questions of law and fact predominate over any individual issues that may arise in this litigation.  This class action is the superior (if not the only) method for the fair and efficient adjudication of this controversy.  Class treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

25.  In addition, TPX and its distributors have acted or refused to act on grounds generally applicable to all members of the class, making final injunctive relief appropriate to the class as a whole.

## INTERSTATE TRADE AND COMMERCE

26. The manufacture, marketing, and sale of Tempur-Pedic brand mattresses is a multi-million dollar per year business.

27. During the relevant time period, the conduct of TPX and its distributors has taken place in and affected interstate commerce in the United States.

28. The conduct of TPX and its distributors has directly, substantially, and foreseeably restrained such trade and commerce.

29. TPX and its distributors sell and ship substantial quantities of Tempur-Pedic brand mattresses in interstate commerce.

30. TPX and its distributors receive payment for such products across state boundaries.

## ANTITRUST ALLEGATIONS

### TPX Has Agreed with Retailers on the Price to be Charged

31. On November 7, 2005, Plaintiffs purchased a Tempur-Pedic mattress from World Hi-Fi's Home Store ("WHHS"), a TPX distributor located at 1600 Shorter Avenue, Rome, Georgia. Plaintiffs paid $2,793.97 for the Tempur-Pedic mattress, plus tax.

8

32. Based on information and belief, TPX has entered into agreements with its distributors that allow TPX to set the prices at which a distributor, such as WHHS, must sell Tempur-Pedic mattresses.

33. A TPX distributor, Mattress King, has stated that it has a dealer agreement with TPX, and this dealer agreement "requires us to sell the Tempurpedic product at prices dictated to us by the manufacturer." Mattress King has further stated that "Factory authorized dealers are not allowed to discount the Tempurpedic product."

34. Consistent with this resale pricing fixing agreement, Tempur-Pedic distributors often advertise that they sell at "lowest factory authorized pricing" or at the "Lowest Possible Price."

35. These agreements between TPX and its distributors result in there being virtually no price competition among retailers and dealers in the sales of Tempur-Pedic mattresses. In fact, consistent with the minimum resale pricing agreements between TPX and its distributors, the actual retail sales prices for TPX mattresses vary little nationally, whether sold over the internet or through brick-and-mortar retailers.

36. TPX sells its products on the www.tempurpedic.com website. The website lists the prices at which it sells its Tempur-Pedic mattresses.

37. Some Tempur-Pedic distributors such as Brookstone, Healthy Back, and Relax the Back also list and have listed on their own webpages the prices at which they sell Tempur-Pedic brand mattresses. The prices that all three of these distributors list are and have been the same as or within one dollar of the prices listed on the Tempur-Pedic website.

38. Based on information and belief, TPX has entered into agreements with its distributors on the prices at which TPX and its distributors will sell Tempur-Pedic brand mattresses to consumers.

39. These agreements between TPX and its distributors result in there being virtually no price competition among retailers and dealers in the sales of Tempur-Pedic mattresses. Consistent with the price-fixing agreements between TPX and its distributors, the actual retail sales prices for TPX mattresses vary little nationally, whether sold over the internet or through brick-and-mortar retailers.

<u>Statements by TPX Related to Price-Fixing</u>

40. Tempur-Pedic International, Inc.'s 2003 and 2004 10-K filings state that while most standard mattress companies offer pricing discounts through a single channel, TPX sells its premium mattresses and pillows through multiple channels at "full prices."

41. Tempur-Pedic International, Inc.'s 2003, 2004, and 2005 10-K filings each include a section on risks and uncertainties that the company may face. One of these, with emphasis added, is:

> Allegations of the possibility of *price fixing in the mattress industry* could increase our costs or otherwise adversely affect our operations.
>
> Our retail pricing policies are subject to antitrust regulations. *If federal or state regulators initiate investigations into our pricing policies*, our efforts to respond could force us to divert management resources and incur significant unanticipated costs. If the investigation resulted in *a charge that our pricing practices or policies were in violation of applicable antitrust regulations*, we could be subject to significant additional costs of defending such charges in a variety of venues and, ultimately, if there were an adjudication that we were in violation of federal, state or other antitrust laws, there could be an imposition of damages for persons injured, as well as injunctive relief. Any requirement that we pay fines or damages could decrease our liquidity and profitability, and any investigation that requires significant management attention or causes us to change our business practices could disrupt our operations, also resulting in a decrease in our liquidity and profitability.

<u>Sales of Tempur-Pedic Mattresses and Injury to Plaintiff</u>

42. TPX has been successful in its visco-elastic mattress business. In 2004, TPX sold 323,444 mattresses in the United States, for net sales of $302.5 million, and in 2005 it sold 383,663 mattresses in the United States, for net sales of $392.0 million.

11

43. The price paid by Plaintiffs when they purchased their Tempur-Pedic mattress from WHHS, and the prices that all putative class members paid on the purchase of all Tempur-Pedic mattresses from conspiring distributors, have been artificially elevated due to the conduct of TPX and its distributors in eliminating price competition for TPX mattresses. On information and belief, consumers of TPX mattresses, such as Plaintiffs, would have collectively paid hundreds of millions less over the years for TPX mattresses if TPX had not prevented its distributors from competing on price.

## COUNT 1
### Resale Price Maintenance/Conspiracy to Fix Prices

44. Plaintiffs incorporate and reallege all prior allegations in this Complaint, as if fully set forth herein.

45. TPX has contracted, combined, and/or conspired with its distributors -- separate economic entities, one of which is WHHS -- to set the prices at which Tempur-Pedic brand mattresses are resold in an independent commercial transaction with subsequent purchasers such as Plaintiffs.

46. Plaintiffs purchased a Tempur-Pedic mattress from WHHS, a Tempur-Pedic distributor that charged Plaintiff a price that TPX set by agreement.

47. The resale price fixing agreements identified above have unreasonably restrained, do unreasonably restrain, and will continue to unreasonably restrain

trade and commerce in the visco-elastic mattress market in violation of the antitrust laws of the United States of America, by eliminating price competition in the sales of Tempur-Pedic mattresses.

48. TPX and its conspiring distributors, by and through their anticompetitive actions as outlined herein, have violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

49. As a result of the unlawful agreements identified herein, TPX has harmed the Plaintiffs and all putative class members by overcharging substantially for Tempur-Pedic mattresses.

## COUNT 2
### Horizontal Price-Fixing

50. Plaintiffs incorporate and reallege all prior allegations in this Complaint, as if fully set forth herein.

51. TPX, as a direct seller of Tempur-Pedic mattresses to consumers, has contracted, combined, and/or conspired with other distributors of Tempur-Pedic mattresses that sell directly to consumers, to set the prices at which Tempur-Pedic brand mattresses are sold to consumers.

52. The contract, combination, and/or conspiracy between TPX and other distributors of Tempur-Pedic brand mattresses -- who compete with each other in the sale of Tempur-Pedic brand mattresses to consumers -- constitutes horizontal

price-fixing, has unreasonably restrained trade and commerce, and will continue to unreasonably restrain trade and commerce, in violation of the antitrust laws of the United States of America, by eliminating price competition in the sales of Tempur-Pedic mattresses.

53. TPX and its distributors, by and through their horizontal price fixing scheme as outlined herein, have violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

54. As a result of the unlawful agreements identified herein, TPX has harmed the Plaintiffs and all putative class members by overcharging substantially for Tempur-Pedic mattresses.

## COUNT 3
### Unreasonable Restraint of Trade in the Visco-Elastic Mattress Market

55. Plaintiff incorporates and realleges all prior allegations in this Complaint, as if fully set forth herein.

56. Visco-elastic foam mattresses comprise a relevant product market, or sub-market, separate and distinct from the market for mattresses generally, under the federal antitrust laws.

57. The relevant geographic market is the United States.

58. TPX controls between 80-90% of the visco-elastic mattress market in the United States.

59. TPX and its conspiring distributors have engaged in a combination and conspiracy in restraint of trade, the purpose and effect of which is to restrain trade and raise prices in the United States in the market for visco-elastic mattresses.

60. The combination and conspiracy has unreasonably restrained, does unreasonably restrain, and will continue to unreasonably restrain trade and commerce in violation of the antitrust laws of the United States of America, by restraining price competition in the sales of mattresses in the visco-elastic market in general, and for Tempur-Pedic mattresses in particular, with no offsetting procompetitive benefit to Plaintiffs or the putative class.

61. TPX, by and through its anticompetitive actions as outlined herein, has violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

62. As a result of the conduct identified herein, TPX has harmed the Plaintiffs and the putative class by overcharging substantially for Tempur-Pedic mattresses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment against Defendants as follows:

(a) that the Court certify this action as a Class Action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, and designate Plaintiffs as the representatives of the Class and counsel for Plaintiffs as counsel for the Class.

(b) that the Court adjudge and decree that TPX has engaged in unlawful conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged;

(c) that the Court order TPX to pay the Class and Plaintiffs actual damages as a result of the unlawful overcharges identified herein, trebled as required under Section 4 of the Clayton Act, 15 U.S.C. §15, according to proof;

(d) that the Court enjoin TPX from continuing or resuming its unlawful anticompetitive conduct, as permitted under Section 16 of the Clayton Act, 15 U.S.C. §26;

(e) that the Court order TPX to pay the costs of this action, including but not limited to attorneys' fees, as permitted under Section 4 of the Clayton Act, 15 U.S.C. §15;

(f) that the Court grant all other relief as may be deemed equitable, appropriate and just.

## JURY DEMAND

Plaintiffs demand a jury trial on all claims so triable.

Dated: 1/5/07

Respectfully Submitted,

Robert K. Finnell
Georgia Bar No. 261575
THE FINNELL FIRM
P.O. Box 63
Rome, Georgia 30162-0063
Phone: (706) 235-7272
Fax: (706) 235-9461
bob@finnelllawfirm.com

Martin D. Chitwood
Georgia Bar No. 124950
Craig G. Harley
Georgia Bar No. 326813
James M. Wilson, Jr.
Georgia Bar No. 768445
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone: (404) 873-3900 or (888) 873-3999
Fax: (404) 876-4476
mchitwood@chitwoodlaw.com
charley@chitwoodlaw.com
jwilson@chitwoodlaw.com

Philip D. Bartz
Cameron Cohick
Donna M. Donlon
Stephen M. Lastelic
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 496-7500
Fax: (202) 496-7756
pbartz@mckennalong.com
ccohick@mckennalong.com
ddonlon@mckennalong.com
slastelic@mckennalong.com

ATTORNEYS FOR PLAINTIFFS