IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| BENNY and WANDA JACOBS, on behalf of a class of similarly situated persons, ) ) ) ) | |
| Plaintiffs, ) ) | CASE NO. 4:07-CV-002(HLM) |
| v. ) ) | |
| TEMPUR-PEDIC INTERNATIONAL, INC. and TEMPUR-PEDIC NORTH AMERICA, INC., ) ) ) ) | |
| Defendants. ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

Jeffrey S. Cashdan
Georgia Bar No. 115775
Catherine M. O'Neil
Georgia Bar No. 553714
Christine A. Hopkinson
Georgia Bar No. 142106
Jonathan R. Chally
Georgia Bar No. 141392
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5139

Counsel for Defendants
TEMPUR-PEDIC INTERNATIONAL INC. and
TEMPUR-PEDIC NORTH AMERICA INC.

# **TABLE OF AUTHORITIES**

**CASES**

*AT&T Corp. v. JMC Telecom, LLC*,
    470 F.3d 525 (3rd Cir. 2006)..................................................................................9

*Bonner v. City of Prichard, Alabama*,
    661 F2d 1206 (11th Cir. 1981) ...............................................................................3

*Business Electronics Corp. v. Sharp Electronics Corp.*,
    485 U.S. 717 (1988).......................................................................................... 7-8

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) ................................................................................11

*Electronics Communications Corp. v. Toshiba America Consumer Products*,
    129 F.3d 240 (2nd Cir. 1997) ...............................................................................10

*Interstate Circuit, Inc. v. United States*,
    306 U.S. 208 (1939)..............................................................................................11

*Lombard's Inc. v. Prince Manufacturing, Inc.*
    753 F.2d 974 (11th Cir. 1985) ................................................................................6

*Monsanto v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)...............................................................................................2

*PepsiCo, Inc. v. The Coca-Cola Company*,
    315 F.3d 101, 109-11 (2nd Cir. 2002)..................................................................11

*Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*,
    637 F.2d 1001 (5th Cir. Feb. 23, 1981) ........................................................ 3, 8-9

*Roberts v. Fla. Power & Light Co.*,
    146 F.3d 1305 (11th Cir. 1998) ..............................................................................6

*Royal Drug Co. v. Group Life and Health Ins. Co.*,
    737 F.2d 1433 (5th Cir. 1984) ..............................................................................12

*Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*,
   208 F.3d 1308 (11th Cir. 2000) ............................................................................6

*South Fla. Water Mgmt. Dist. v. Montalvo*,
   84 F.3d 402 (11th Cir. 1996) ................................................................................6

*The Sports Center, Inc. v. Riddell, Inc.*,
   673 F.2d 786 (5th Cir. 1982) ................................................................................8

*Toys "R" Us, Inc. v. FTC*,
   221 F.3d 928 (7th Cir. 2000) ....................................................................... 10-11

*United States v. Chandler*,
   388 F.3d 796 (11th Cir. 2004) ............................................................................12

*United States* v. *Colgate & Co.,*
   250 U.S. 300 (1919).............................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).........................................................................................3, 6

ABA Section of Antitrust Law, *Antitrust Law Developments* (5th ed. 2002)...........8

Tempur-Pedic International Inc. and Tempur-Pedic North America Inc. (collectively "TPX")[1] submit this Memorandum of Law in Support of its Motion to Dismiss Counts II and III of Plaintiffs' Complaint.

*   *   *   *

This lawsuit concerns TPX's vertical retail pricing policy for TPX mattress products. In this action, Plaintiffs allege that TPX has reached an agreement with retailers to set the resale price to consumers for TPX mattress products. This type of alleged agreement -- called "minimum resale price maintenance" in the antitrust case law -- is a classic vertical arrangement, as it involves the relationship between a manufacturer (here, TPX) and its downstream retailers (or distributors).

Vertical minimum resale price maintenance agreements are currently unlawful per se -- though the Supreme Court is revisiting that approach. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, No. 06-480 (certiorari granted December 7, 2006). Settled law, however, permits a manufacturer unilaterally to announce that it will refuse to do business with dealers who sell below the

---

[1] Plaintiffs refer to Tempur-Pedic International Inc. and Tempur-Pedic North America Inc. as one entity, and allege that this one entity, "TPX," imposes the restraints at issue. (Complaint, ¶ 3). In fact, these are separate entities. Accepting Plaintiffs' characterization for purposes of this motion only, however, Tempur-Pedic International Inc. and Tempur-Pedic North America Inc. will be referred to collectively as "TPX."

manufacturer's suggested retail price. *United States* v. *Colgate & Co.,* 250 U.S. 300, 307 (1919); *see also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984). While Plaintiffs allege the existence of vertical agreements based solely on "information and belief" (Complaint ¶ 32), the evidence ultimately will demonstrate that TPX's vertical pricing policy is unilateral and, hence, perfectly legal. The evidence also will show that TPX's policy promotes competition in the intense business for the sale of mattresses. In short, TPX is ready and willing to take on Plaintiffs' core allegations -- a challenge to TPX's vertical pricing policy -- and TPX expects total vindication.

Apparently aware of the tenuous merits of their assault on TPX's vertical pricing policy, Plaintiffs also attempt to state horizontal price-fixing claims premised solely on the alleged existence of these "resale pricing [sic] fixing agreements" (Complaint ¶ 34). Plaintiffs' effort to recast their vertical claim as horizontal price fixing fails as a matter of law. Binding law of this circuit makes clear that alleged "[c]onspiracies between a manufacturer and its distributors are ***only*** treated as horizontal . . . when the source of the conspiracy is a combination of the distributors." *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*, 637 F.2d

1001, 1004 (5th Cir. Feb. 23, 1981) (emphasis added). [2] Here, Plaintiffs have not made a single allegation that TPX retailers have conspired among themselves to fix prices, much less that these retailers have instigated a horizontal conspiracy that TPX joined.

Because the Complaint fails to plead facts sufficient to state a horizontal conspiracy claim, Counts II and III of the Complaint should be dismissed as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6).

## *FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT*

This action involves the business of manufacturing and selling mattresses in the United States. Plaintiffs Benny and Wanda Jacobs claim to have purchased a Tempur-Pedic mattress for approximately $2,800 on November 7, 2005 from a retailer in Rome, Georgia. (Complaint ¶¶ 14, 31). Plaintiffs now seek to represent a class of all purchasers of Tempur-Pedic brand mattresses in the United States from TPX or any retailer from January 5, 2003 to the present. (Complaint ¶ 18).

Despite the Complaint's almost singular focus on Tempur-Pedic brand mattresses, there are a variety of types of mattresses, including traditional

---

[2] *See Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent for courts within the Eleventh Circuit all decisions by the Fifth Circuit resolved prior to October 1, 1981).

innerspring mattresses and foam mattresses, sold to consumers annually. (Complaint ¶ 1). TPX is a leading manufacturer of one type of foam mattress -- viscoelastic memory foam mattresses. (Complaint ¶¶ 3, 15). Viscoelastic memory foam originally was developed by the National Aeronautic and Space Administration ("NASA") to relieve astronauts of the pressure created by gravitational forces during lift-off. (Complaint ¶ 2). After the technology was released to the public, TPX spent years harnessing and perfecting it for use in mattresses and pillows. (Complaint ¶ 3).

Plaintiffs allege -- principally on "information and belief" -- that "TPX has entered into agreements with its distributors that allow TPX to set the prices at which a distributor . . . must sell [a] Tempur-Pedic mattress." (Complaint ¶ 32). According to Plaintiffs, these vertical price-fixing agreements allegedly entered into between TPX and each of its distributors "result in there being virtually no price competition among retailers and dealers in the sale of Tempur-Pedic mattresses." (Complaint ¶¶ 35, 39). TPX also sells some mattresses directly to consumers, and Plaintiffs allege that those sales also are governed by the bilateral vertical agreements between TPX and each of its retailers. (Complaint ¶¶ 36, 38). The Complaint contains no allegations of any agreement among TPX retailers. The Complaint also contains no allegations of

anything other than separate bilateral agreements between TPX and each of its retailers; that is, the Complaint does not allege the existence of a single agreement between TPX and *all* of its retailers.  Nonetheless, the Complaint alleges a single national class represented solely by Plaintiffs.

Based on these identical allegations of bilateral, vertical price agreements, Plaintiffs purport to state three separate claims.  In Count I, Plaintiffs challenge the alleged agreements under Section 1 of the Sherman Act as unlawful vertical price-fixing agreements.  (Complaint ¶¶ 44-49). In Counts II and III, Plaintiffs allege that the very same agreements constitute a horizontal agreement among TPX and all other retailers of Tempur-Pedic mattresses, in violation of Section 1 of the Sherman Act.  (Complaint ¶¶ 50-62). Count II purports to state a per se unlawful horizontal price-fixing claim (Complaint ¶¶ 50-54), while Count III purports to state a horizontal restraint of trade claim based on the "rule of reason." (Complaint ¶ 55-62).  Based on these allegations, Plaintiffs seek to have a single national class certified and to collect trebled damages, injunctive relief, and attorneys' fees.

## *ARGUMENT*

A complaint must be dismissed under Fed R. Civ. P. 12(b)(6) when, as here, the plaintiffs have failed to allege a set of facts in support of their claims that would entitle them to relief. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000). The Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiffs. *See Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). The Court, however, should ignore any allegations that contain no more than opinions or legal conclusions. *See South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996). "A conclusory allegation of conspiracy to restrain trade will not survive a motion to dismiss." *Lombard's Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985).

Here, Plaintiffs have failed to allege even the most basic facts necessary to support their claims premised on the existence of a horizontal conspiracy among TPX and each retailer of TPX mattress products. Plaintiffs simply have tried to recast their claim of vertical price fixing as claims alleging horizontal price fixing and restraint of trade. To properly state a horizontal conspiracy claim, however, Plaintiffs must allege facts showing a conspiracy

among TPX retailers. They have not even come close. Accordingly, Counts II and III of the Complaint should be dismissed as a matter of law.

## I.   PLAINTIFFS' ALLEGATIONS OF VERTICAL AGREEMENTS DO NOT SUPPORT THEIR HORIZONTAL CLAIMS.

### A.   *The Alleged Bilateral Agreements Are Vertical In Nature.*

"Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988) (holding manufacturer agreement with distributor to terminate another distributor for price cutting is not a horizontal price restraint or otherwise subject to per se liability). Here, Plaintiffs' Complaint alleges individual vertical agreements between TPX, as a manufacturer of Tempur-Pedic mattresses, and TPX retailers. Specifically, Plaintiffs allege that TPX "requires distributors to agree: (1) to adhere to a minimum resale price set by TPX; and (2) not to discount on price." (Complaint ¶ 7). As the Fifth Circuit explained in a case binding on courts within this Circuit, where it is alleged that a manufacturer "imposed an agreement upon its distributors . . ., that agreement is a vertical one, and the restrictions imposed are vertical restrictions." *Red Diamond Supply*, 637 F.2d at 1004; *see also The Sports Ctr., Inc. v. Riddell, Inc.*, 673 F.2d 786, 791 (5th Cir. 1982) (because "[t]he policy [at

issue] emanated from . . . the product manufacturer" it was a vertical restraint). *See generally* ABA Section of Antitrust Law, *Antitrust Law Developments* (5th ed. 2002) at 130 (discussing resale price maintenance "or vertical price fixing"). Each and every count in the Complaint, including Counts II and III, alleges illegality based on the existence of these vertical agreements. (Complaint ¶ 45 (Count I) ("TPX has contracted . . . with its distributors."); ¶¶ 50, 52-54 (Count II) (incorporating prior allegations and relying on agreements between TPX and its distributors); ¶ 55, 59-61 (same)).

> B. *The Complaint Fails To Allege Facts Supporting Claims Of Horizontal Conspiracy.*

In an effort to justify their horizontal restraint claims, Plaintiffs allege that TPX sells mattresses directly to consumers, allegedly in competition with retailers. Even if true, this allegation hardly suffices to convert the bilateral vertical agreements alleged with each TPX retailer into a horizontal conspiracy. As the Supreme Court explained in *Sharp Electronics*, "a facially vertical restraint imposed by a manufacturer" may only be construed as horizontal if "it has been coerced by a 'horizontal cartel' agreement among [its] distributors." 485 U.S. at 730 n.4.

Courts routinely have rejected as a matter of law such feeble allegations of horizontal agreement. For example, in *Red Diamond Supply*, 637 F.2d at 1002, the Fifth Circuit considered an antitrust claim premised on the termination of a distributor for violating manufacturer-imposed territorial and customer restraints. As in this case, the plaintiff in *Red Diamond Supply* alleged that the manufacturer "imposed an agreement on its distributors . . . ." *Id*. at 1004. There was no allegation, however, that the distributors organized the restraint at issue, that the distributors agreed among themselves to adhere to the manufacturer's vertical restraint, or that the manufacturer attempted to orchestrate such an agreement among distributors. *Id.* at 1004. As a result, the Fifth Circuit held that the alleged restraint was vertical. *Id.* The court rejected the notion that the manufacturer's downstream competition with its distributors had any bearing on the proper characterization of the restraint at issue. *Id.* at 1004-05 ("Conspiracies between a manufacturer and its distributors are only treated as horizontal when the source of the conspiracy is a combination of the distributors. . . . ***That [the manufacturer] also distributed some of its own goods does not alter the situation.***") (emphasis added). *See also AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3rd Cir. 2006) ("Although we agree that the relationship had horizontal elements, it is undisputed that AT&T supplied telecommunications

service to JMC for resale. The fact that AT&T also sold phone cards at the resale level does not change the analysis."); *Elecs. Commc'ns. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243 (2nd Cir. 1997) ("Restraints . . . imposed by agreement between firms at different levels of distribution [are] vertical restraints. . . . This is so even if the distributor and manufacturer also compete at the distribution level . . ..").

In order to justify treating the bilateral vertical agreements at issue in the Complaint as a horizontal conspiracy among TPX and retailers of TPX products, Plaintiffs would have to allege facts showing concerted action among the various TPX retailers. *See, e.g.*, *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 219, 222-23 (1939) (finding movie exhibitioners facilitated horizontal conspiracy among movie distributors where "distributor[s] . . . agreed and conspired among themselves to take uniform action upon the proposals" made by the exhibitioners). A recent illustrative case is *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 (7th Cir. 2000), where the court considered agreements between Toys "R" Us ("TRU") and each of its individual suppliers to restrict distribution of certain toy products to competitors. In treating the conduct at issue as horizontal, the Seventh Circuit explained that "TRU was not content to stop with vertical agreements." *Id.* at 932. Rather, the evidence showed that TRU orchestrated an agreement among

its suppliers, obtaining agreements from each supplier to boycott TRU's competitors premised on the express condition that TRU's other suppliers also would join the agreement. *Id.* at 932. In other words, the evidence showed that the only way to implement the vertical boycott TRU desired was for TRU to engineer a horizontal agreement among competitors. *See also PepsiCo, Inc. v. The Coca-Cola Company*, 315 F.3d 101, 109-11 (2nd Cir. 2002) (affirming dismissal of horizontal conspiracy claim premised on vertical agreements where plaintiff "offered no evidence of direct communications among" distributors).

Here, Plaintiffs have not alleged any horizontal agreement among TPX retailers and clearly have not stated facts showing that TPX orchestrated any cartel among distributors to solidify the alleged vertical restraints. The only allegation is that each TPX retailer had a bilateral, vertical price-fixing agreement with TPX. Plaintiffs' Complaint contains no reference to agreements, meetings, or even discussion among retailers about the price for TPX mattresses, and no facts implicating TPX in efforts to coordinate or facilitate a conspiracy among its retailers. Thus, the Complaint falls woefully short of alleging a viable horizontal claim -- much less one premised on the notion of a single national price-fixing conspiracy among TPX retailers. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002) (affirming motion to dismiss Sherman Act claims; "[A] wheel

without a rim is not a single conspiracy.") *citing Kotteakos v. United States*, 328 U.S. 750, 755 (1946); *Spectators' Commc'n. Network, Inc. v. Colonial Country Club*, 253 F.3d 215, 224 (5th Cir. 2004) ("There is thus evidence of sponsors separately agreeing with the PGA, but no evidence of the competitors agreeing among themselves.  This hub and spoke sort of proof does not establish a horizontal combination."); *Royal Drug Co. v. Group Life and Health Ins. Co.*, 737 F.2d 1433, 1436-37 (5th Cir. 1984) (concluding that agreement was not a horizontal restraint because, among other things, there was no "allegation that [the supplier] sought the support or advice of the [distributors] in establishing the fixed fees"); *see also United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004) ("[W]here the 'spokes' of a conspiracy have no knowledge of or connection with any other, dealing independently with the hub conspirator, there is not a single conspiracy, but rather as many conspiracies as there are spokes.").

Plaintiffs' Complaint challenges TPX's alleged bilateral vertical price-fixing agreements with retailers.  Nothing more.  Because the horizontal restraint of trade claims are insufficiently pleaded as a matter of law, they should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Counts II and III of the Complaint should be dismissed.

Dated:  February 23, 2007

                              Respectfully submitted:

                              */s/ Christine A. Hopkinson*
                              Jeffrey S. Cashdan
                              Georgia Bar No. 115775
                              Catherine M. O'Neil
                              Georgia Bar No. 553714
                              Christine A. Hopkinson
                              Georgia Bar No. 142106
                              Jonathan R. Chally
                              Georgia Bar No. 141392
                              KING & SPALDING LLP
                              1180 Peachtree Street, N.E.
                              Atlanta, Georgia  30309-3521
                              Telephone:  (404) 572-4600
                              Facsimile:  (404) 572-5139
                              Email of filer: chopkinson@kslaw.com

                              Counsel for Defendants
                              TEMPUR-PEDIC INTERNATIONAL INC. and
                              TEMPUR-PEDIC NORTH AMERICA INC.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of Georgia, counsel for Tempur-Pedic International Inc. and Tempur-Pedic North America Inc. certifies that **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1(C).

*/s/ Christine A. Hopkinson*
Christine A. Hopkinson

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** was served via the Court's Electronic Filing System this 23rd day of February, 2007 on the following counsel of record:

Martin D. Chitwood
Craig G. Harley
James M. Wilson, Jr.
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
mchitwood@chitwoodlaw.com
charley@chitwoodlaw.com
jwilson@chitwoodlaw.com

Philip D. Bartz
Cameron Cohick
Donna M. Donlon
Stephen M. Lastelic
MCKENNA LONG ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
pbartz@mckennalong.com
ccohick@mckennalong.com
ddonlon@mckennalong.com
slastelic@mckennalong.com

Robert K. Finnell
THE FINNELL FIRM
One West Fourth Street
Suite 200
Rome, Georgia
bob@finnelllawfirm.com

*/s/ Christine A. Hopkinson*
Christine A. Hopkinson
Georgia Bar No. 142106