IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| BENNY and WANDA JACOBS, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Case No. 4:07-cv-002 (RLV) |
| | : |
| TEMPUR-PEDIC INTERNATIONAL, INC. | : |
| and TEMPUR-PEDIC NORTH AMERICA, INC. | : |
| | : |
| Defendants. | : |
| _____ | : |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Robert K. Finnell
THE FINNELL FIRM
One West Fourth Street
Suite 200
Rome, GA  30167
Phone:  (706) 235-7272
Fax:  (706) 235-9461

Martin D. Chitwood
Craig G. Harley
James M. Wilson, Jr.
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone:  (404) 873-3900
Fax:  (404) 876-4476

Philip D. Bartz
Cameron Cohick
Donna M. Donlon
Stephen M. Lastelic
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 496-7500
Fax: (202) 496-7756

COUNSEL FOR PLAINTIFFS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

I.    BACKGROUND ...........................................................................2

II.   PLAINTIFFS STATE A CLAIM FOR HORIZONTAL PRICE
      FIXING ......................................................................................5

      A.    Plaintiffs State a Claim for Horizontal Price Fixing Because
            They Allege that TPX Competes Horizontally with Its
            Distributors .....................................................................6

      B.    Agreements on Price Between Competing Distributors
            Constitute Horizontal Price Fixing Even if One of the
            Distributors is Also the Manufacturer ..................................7

      C.    The Authority Upon Which Defendants Rely Is Inapposite ..............10

      D.    Plaintiffs Need Not Allege Agreement Among Distributors to
            State a Horizontal Conspiracy Claim Between Distributors and
            a Manufacturer that Directly Competes with Distributors ................17

      E.    Count III Properly States a Claim Under Section 1 ...........................19

III.  CONCLUSION ...........................................................................20

CERTIFICATE OF COMPLIANCE ...................................................................21

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

AT&T Corp. v. JMC Telecom, LLC, 470 F.3d 525 (3rd Cir. 2006).......................14

Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc., 441 U.S. 1 (1979) ....11

Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922 (11th Cir. 1997) ...........1

Business Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717 (1988)........................14

Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36 (1977) ............ 10, 11, 12

Dickson v. Microsoft Corp., 309 F.3d 193 (4th Cir. 2002) ....................................18

Dr. Miles Med. Co. v. John D. Park & Sons Co., 220 U.S. 373 (1911)....................4

Duke v. Cleland, 5 F.3d 1399 (11th Cir.1993) ........................................................1

Electronics Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.,
   129 F.3d 240 (2nd Cir. 1997)...............................................................................14

F.T.C. v. Indiana Fed'n of Dentists, 476 U.S. 447 (1986) ............................... 11, 12

Great Gatsby's Auction Gallery, Inc. v. United Parcel Serv., Inc.,
   1:05-CV-3084-GET, 2007 WL 602221 (N.D. Ga. Feb. 16, 2007).......................1

In the Matter of Chock Full O'Nuts Corp., 83 F.T.C. 575,
   1973 WL 165278 (F.T.C. 1973) .................................................................... 9, 15

Interphoto Corp. v. Minolta Corp., 295 F. Supp. 711 (S.D.N.Y. 1969)....... 9, 15, 16

Interstate Circuit, Inc. v. United States, 306 U.S. 208 (1939)................................17

Int'l Logistics Group, Ltd. v. Chrysler Corp., 884 F.2d 904 (6th Cir.1989)...........19

Northern Pac. R.R. Co. v. United States, 356 U.S. 1 (1958)...................................11

Northwest Wholesale Stationers v. Pacific Stationary & Printing Co.,
   472 U.S. 284 (1985)............................................................................................12

PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101 (2nd Cir. 2002) .............................18

Pine Ridge Recycling, Inc. v. Butts County, Ga., 855 F. Supp. 1264
   (M.D. Ga. 1994).....................................................................................................1

Quality Foods de Centro America, S.A. v. Latin Am. Agribusiness Dev. Corp.,
   S.A., 711 F.2d 989 (11th Cir. 1983) .....................................................................1

Red Diamond Supply, Inc. v. Liquid Carbonic Corp., 637 F.2d 1001
(5th Cir. 1981) ................................................................. 12, 13, 16

Royal Drug Co. v. Group Life & Health Ins. Co., 737 F.2d 1433
(5th Cir. 1984) ...........................................................................18

Spectators' Commc'n Network, Inc. v. Colonial Country Club,
253 F.3d 215 (5th Cir. 2001) ....................................................18

Sports Center, Inc. v. Riddell, Inc., 673 F.2d 786 (5th Cir. 1982) .........................13

State Oil Co. v. Khan, 522 U.S. 3, 22 (1997) ........................................................12

Toys "R" Us, Inc. v. F.T.C., 221 F.3d 928 (7th Cir. 2000) ....................................18

United States v. Chandler, 388 F.3d 796 (11th Cir. 2004) ....................................18

United States v. Colgate & Co., 250 U.S. 300 (1919) ..............................................5

United States v. McKesson & Robbins, Inc., 351 U.S. 305 (1956) ............... 7, 8, 9

United States v. Socony-Vacuum Oil Co., 310 U.S. 150 (1940) .................. 4, 6, 12

United States v. Trenton Potteries Co., 273 U.S. 392 (1927) ...................................6

## Statutes

Consumer Goods Pricing Act of 1975, Public Law 94-145 (89 Stat. 801) ..............8

McGuire Act, 66 Stat. 632 .....................................................................................8

Miller-Tydings Act, 50 Stat. 693 ...........................................................................7

Sherman Act, 15 U.S.C. §1 ....................................................................................2

## Other Authorities

Pet'r Br. in Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,
Supreme Ct. Case No. 06-480, 2007 WL 160780 (Jan. 22, 2007) ......................15

Pet'r Reply Br. on Certiorari, Leegin Creative Leather Products, Inc. v. PSKS, Inc.,
Supreme Ct. Case No. 06-480, 2006 WL 3379539 (Nov. 20, 2006)...................15

Plaintiffs allege that Defendants, who manufacture, distribute, and sell visco-elastic foam mattresses, have entered into price fixing agreements with distributors of their product. Plaintiffs allege that this price fixing scheme violates the antitrust laws, as being both vertical and horizontal price fixing. Defendants have moved to dismiss the claims that are based on horizontal price fixing.

As discussed below, Defendants' motion should be denied because Plaintiffs have adequately pled horizontal price fixing. A court should grant a motion to dismiss only when the complaint alleges no set of facts upon which relief can be granted. *Brown v. Budget Rent-A-Car Systems, Inc.*, 119 F.3d 922, 923 (11th Cir. 1997); *Pine Ridge Recycling, Inc. v. Butts County, Ga.*, 855 F. Supp. 1264, 1268 (M.D. Ga. 1994). In reading the complaint, a court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiffs. *Quality Foods de Centro America, S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). All reasonable inferences must be made in favor of the plaintiffs. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993); *Great Gatsby's Auction Gallery, Inc. v. United Parcel Serv., Inc.*, 1:05-CV-3084-GET, 2007 WL 602221, at *1 (N.D. Ga. Feb. 16, 2007).

The crux of Defendants' arguments is that Counts II and III should be dismissed because Plaintiffs have not alleged a conspiracy *among* the TPX retailers

themselves.  Because Plaintiffs are not presently claiming such a conspiracy occurred, and because there is no requirement that they do so in order to state a claim for horizontal price fixing, Defendants' motion should be denied.

## I.    BACKGROUND

Plaintiffs' Complaint alleges three counts in violation of Section 1 of the Sherman Act, 15 U.S.C. §1:  (1) resale price maintenance (or vertical price fixing); (2) price fixing between competitors (or horizontal price fixing); and (3) unreasonable restraint of trade in the visco-elastic mattress market in the United States.  Each of these counts is based on Defendants' alleged agreements with Tempur-Pedic retailers to fix the price at which Defendants and their retailers sell Tempur-Pedic mattresses.

Plaintiffs Benny and Wanda Jacobs allege that they purchased a Tempur-Pedic brand mattress from a Tempur-Pedic distributor.  (Compl. ¶ 31.)  As set forth in the Complaint, and summarized below, Plaintiffs allege that the prices for Tempur-Pedic mattresses are and have been artificially inflated by the actions of Defendants Tempur-Pedic International, Inc., and Tempur-Pedic North America, Inc. (collectively "TPX"), and their retailers.  Plaintiffs allege that TPX's conduct is uniform nationwide, and that all purchasers of Tempur-Pedic mattresses have paid artificially inflated prices.  (*Id.* ¶ 43.)  Plaintiffs therefore seek to represent a

class of all persons who purchased Tempur-Pedic brand mattresses for delivery in the United States, at any time from January 5, 2003 to the present. (*Id.* ¶ 18.)

More specifically, Plaintiffs allege that TPX manufactures the Tempur-Pedic brand of mattresses, (Compl. ¶ 3), and it sells these mattresses (1) through retailers, and (2) directly to consumers, (*id.* ¶ 10). Plaintiffs also allege that the retailers have agreed with TPX to adhere to TPX's minimum prices and to not discount on price. (*Id.* ¶¶ 7, 32, 33.) Further, Plaintiffs set forth in the Complaint statements of a retailer of TPX mattresses who wrote to a consumer that it has an *agreement* with TPX concerning its prices: "th[e] dealer agreement 'requires us to sell the Tempurpedic product at prices dictated to us by the manufacturer' [and] '[f]actory authorized dealers are not allowed to discount the Tempurpedic product.'" (*Id.* ¶ 33.) Plaintiffs further allege that at least one retailer seeks permission from TPX before discounting the price of the mattresses, which also evidences an agreement on prices. (*Id.* ¶ 8.) Additionally, Plaintiffs allege that investigation into the prices at which Tempur-Pedic mattresses are sold shows that all retailers (including TPX) charge essentially the same price. (*Id.* ¶¶ 35-37.)

Count I of the Complaint sets forth a claim for resale price maintenance, based on TPX's agreement, as a manufacturer, with its retailers on the prices they will charge consumers. (Compl. ¶¶ 44-49.) An agreement between a manufacturer

and its retailers fixing the price at which the retailers will resell the goods is per se unlawful under the antitrust laws. *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911).

In Count II of the Complaint, Plaintiffs allege horizontal price fixing based on TPX's agreement as a retailer (which sells mattresses directly to consumers) with other Tempur-Pedic retailers on the prices they will charge consumers for the mattresses. (*Id.* ¶¶ 50-54.) Agreements on price between entities that compete with each other are also per se unlawful under the antitrust laws. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940).

In Count III of the Complaint, Plaintiffs allege that the agreements Defendants have made with the retailers unreasonably restrain trade. Count III is based on the same factual allegations set forth in Counts I and II. (Compl. ¶¶ 55-62.) Plaintiffs assert Count III to allege all facts necessary to state a claim under the rule of reason, in the event Count I is not evaluated under the per se rule.[1]

---

[1] As Defendants point out, and Plaintiffs recognize, the per se rule that applies to vertical price fixing, as established in *Dr. Miles*, is currently under review by the United States Supreme Court in *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, Case No. 06-480 (certiorari granted December 7, 2006). The significance of per se treatment is discussed below.

Because TPX's actions have caused actual antitrust injury in the relevant market, TPX's agreements with its retailers violate the antitrust laws under either analysis.

Defendants move to dismiss only Counts II and III. Although Defendants have not yet filed an Answer as to Count I, they appear to acknowledge that TPX does, in fact, require retailers to charge uniform prices. TPX apparently intends to defend its actions on the narrow ground that such price uniformity is achieved not by any agreement between TPX and its retailers, but by the unilateral conduct of TPX. (Mot. to Dismiss at 4-5,[2] referencing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919), which held that resale price maintenance is not illegal if the conduct at issue is unilateral action of the manufacturer). Plaintiffs, however, allege that TPX retailers have stated that an agreement exists. (Compl. ¶ 33).

## II.    PLAINTIFFS STATE A CLAIM FOR HORIZONTAL PRICE FIXING

Plaintiffs have alleged all the necessary elements to state a claim for horizontal price fixing. Defendants essentially argue that Counts II and III should be dismissed because TPX's agreement with retailers with whom it competes for sales to consumers should not be treated as a horizontal price fixing agreement

---

[2] Defendants' Motion to Dismiss does not include true page numbers throughout; therefore, when citing to the Motion to Dismiss, Plaintiffs will reference the page numbers that appear on the electronic filing header.

among competitors because TPX's status as a supplier trumps its status as a retailer. Defendants claim that the horizontal aspect of TPX's agreement with the retailers is not cognizable as a matter of law, unless the retailers also agree with each other to fix prices. Defendants ignore Supreme Court precedent on this point, and they instead cite two types of inapposite authority in an effort to support their argument. Consequently, the cited cases provide no basis for raising the standard for pleading horizontal price fixing, as Defendants argue.

### A.    Plaintiffs State a Claim for Horizontal Price Fixing Because They Allege that TPX Competes Horizontally with Its Distributors.

Plaintiffs have made all allegations necessary to support their horizontal price fixing claim. To state a claim for horizontal price fixing, a plaintiff must allege an agreement between competitors to fix prices, as well as injury to the plaintiff. *Socony-Vacuum*, 310 U.S. at 223; *United States v. Trenton Potteries Co.*, 273 U.S. 392, 396-401 (1927).

Plaintiffs allege that TPX sells mattresses directly to consumers. (Compl. ¶ 10.) Plaintiffs also allege that TPX retailers sell mattresses directly to consumers, and that they do so in direct competition with TPX. (*See id*. ¶¶ 7, 10, 18, 31, 32.) Thus, as a matter of fact, TPX horizontally competes against other Tempur-Pedic retailers because they all operate at the same level of distribution (*i.e.*, ultimate sales to consumers). *United States v. McKesson & Robbins, Inc.*,

351 U.S. 305, 313 (1956) (parties are in competition with each other if they "compete at the same functional level," *e.g.*, the wholesale level).  Plaintiffs also allege that TPX agreed with the retailers on the prices to charge consumers for the mattresses.  (Compl. ¶¶ 9, 32, 33, 45, 51, 59.)  Accordingly, the Complaint properly sets forth a horizontal price fixing claim.

> **B.**    **Agreements on Price Between Competing Distributors Constitute Horizontal Price Fixing Even if One of the Distributors is Also the Manufacturer.**

Defendants first appear to argue that a price fixing agreement between a manufacturer and its retailers can never be considered horizontal, even if the parties directly compete against each other at the same level of distribution.  (Mot. to Dismiss at 10-13.)  This argument is wrong.

The horizontal aspects of a price fixing agreement between distributors and a manufacturer who competes directly against those distributors are not ignored simply because the parties are also in a vertical relationship.  *See McKesson*, 351 U.S. 305.  In that case, a manufacturer (McKesson) distributed its products directly to retailers, but also through wholesalers who then resold to retailers.  *Id*. at 307.  McKesson agreed with its wholesalers on the prices the wholesalers would charge to retailers.  *Id*.  Notably, at the time of this case, vertical resale price maintenance was generally legal under the Miller-Tydings Act, 50 Stat. 693, and the McGuire

Act, 66 Stat. 632 ("fair trade" laws), which gave States the authority to permit

manufacturers lawfully to enter into resale price agreements with distributors.

Thus, the purely vertical resale price maintenance aspect of McKesson's

agreements with the wholesalers were legal in light of these "fair trade" laws.[3]

*McKesson*, 351 U.S. at 312 n.14.  The fair trade laws, however, expressly excluded

agreements between entities "in competition with each other."  *Id*. at 308.

Based on the fact that McKesson not only supplied the wholesalers but also

competed against them, the United States brought suit against McKesson, alleging

horizontal price fixing in violation of Section 1 of the Sherman Act.  *Id*.  When

determining whether the horizontal aspects of McKesson's agreements with the

wholesalers should be considered exempt from the Sherman Act under the fair

trade laws, the district court focused on McKesson's vertical relationship with the

wholesalers and determined that that vertical relationship trumped the horizontal

aspects of the agreements.  *Id*. at 308.  The Supreme Court reversed, holding that

McKesson's own participation at the wholesale level (*i.e.*, selling directly to

retailers) meant that it "compete[d] 'at the same functional level' with each of the

---

[3] These "fair trade" laws have since been repealed, Consumer Goods Pricing Act of
1975, Public Law 94-145 (89 Stat. 801), and resale price maintenance is again a
per se violation of the antitrust laws.

94 wholesalers with whom it ha[d] price-fixing agreements," notwithstanding the fact that it also supplied the wholesalers. *Id*. at 313. Thus, the Supreme Court (and Congress by expressly continuing the proscription against price fixing between competitors) rejected the proposition that horizontal price fixing agreements among competitors are the functional and legal equivalent of vertical agreements if those competitors also have a vertical relationship.

*McKesson*'s holding has been subsequently followed. For example, in *Interphoto Corp. v. Minolta Corp*., 295 F. Supp. 711 (S.D.N.Y.), *aff'd*, 417 F.2d 621 (2nd Cir. 1969), plaintiffs alleged that the manufacturer engaged in resale price maintenance as well as horizontal price fixing, due to its dual role as a manufacturer and a distributor. *Id*., 295 F. Supp. at 715, 718 n.2. In recognizing the horizontal price fixing claim as viable, the court noted that "the antitrust violation [was] even more pernicious," as it would create unlawful cartel activity coexisting with the attempt to vertically control prices. *Id*. at 718 n.2 (citing *McKesson*, 351 U.S. 305). In another example, the Federal Trade Commission held that price agreements between franchisees and a franchisor who also sells directly in competition with the franchisees constitutes both horizontal and vertical price fixing. *In the Matter of Chock Full O'Nuts Corp.*, 83 F.T.C. 575, 1973 WL 165278, at 42 (F.T.C. 1973).

The argument made by Defendants here is effectively the same as that rejected in *McKesson*. Both McKesson and TPX are alleged to have distributed directly and through middlemen, and both are alleged to have entered into resale price agreements with those middlemen. McKesson was not entitled to exemption from the horizontal price fixing rules simply because it also had a vertical relationship with the wholesalers, and neither is TPX. *McKesson* dictates that Defendants' argument be rejected.

### C.    The Authority Upon Which Defendants Rely Is Inapposite.

To support their contention that all horizontal aspects of a dual horizontal-vertical relationship should be treated as vertical, Defendants are forced to rely on cases that do not address price fixing at all. The cases they cite in support of this contention involve non-price restraints and are therefore inapposite to the issue presented here. The reason is that the antitrust laws typically treat agreements on price very differently from agreements involving non-price restraints. *See, e.g.*, *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 52 n.18 (1977) ("we are concerned here only with nonprice vertical restrictions. The per se illegality of *price* restrictions has been established for many years and involves significantly different questions of analysis and policy." (emphasis added)).

Generally, restraints of trade in violation of Section 1 are evaluated under either per se or rule of reason analysis.  The Supreme Court has stated that where a "practice facially appears to be one that would always or almost always tend to restrict competition and decrease output," it is considered per se illegal and automatically condemned.  *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1, 19-20 (1979) (internal quotations and citations omitted).  If a restraint is per se illegal, it is deemed a violation without the need to prove actual injury to competition.  *Northern Pac. R.R. Co. v. United States*, 356 U.S. 1, 5 (1958) (per se agreements "are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.").

On the other hand, conduct that does not unambiguously injure competition ordinarily is not subject to the per se rule but instead is analyzed under the rule of reason.  *See, e.g., F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459 (1986) (rule of reason applied "where the economic impact of certain practices is not immediately obvious").  Under the rule of reason, a court "weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition."  *GTE Sylvania*, 433 U.S. at 49).

Most price fixing agreements are analyzed under per se rules because they eliminate price competition and are therefore a "threat to the central nervous system of the economy." *United States v. Socony Vacuum Oil Co.*, 310 U.S. at 224 n.59. Courts, therefore, typically do not examine the economic justifications for price fixing agreements.[4] *Id.* Conversely, most non-price restraints are analyzed under the rule of reason because it is generally recognized that non-price restraints may have procompetitive benefits. *See, e.g., GTE Sylvania, Inc.*, 433 U.S. at 59 (vertical non-price restraints are judged under the rule of reason); *Indiana Fed'n of Dentists*, 476 U.S. at 458-59 (horizontal refusal to deal governed by rule of reason); *Northwest Wholesale Stationers v. Pacific Stationary & Printing Co.*, 472 U.S. 284, 294-95 (1985) (same).

Failing to recognize the critical distinction between price and non-price restraints under the antitrust laws, Defendants rely exclusively on non-price cases. For example, they cite *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*, 637 F.2d 1001 (5th Cir. 1981), which involved territorial and customer restrictions -- but no agreement on price. *Id.* at 1002-03. Defendants ignore that the court in *Red*

---

[4] The only exception to per se treatment for price fixing claims is that *vertical maximum* price fixing is governed by the rule of reason. *State Oil Co. v. Khan*, 522 U.S. 3, 22 (1997). Maximum price fixing, unlike minimum price fixing, can be of benefit to consumers. *Id.* at 12-18.

*Diamond* based its holding on the fact that the restraints at issue were not price

restraints when determining that rule of reason analysis would apply.  *Id.* at 1005

("Since the alleged restrictions are vertical (*and not directed at fixing prices*), their

legality is governed by the rule of reason." (emphasis added)).[5]

Another case Defendants cite, *Sports Center, Inc. v. Riddell, Inc.*, 673 F.2d

786 (5th Cir. 1982) is inapposite for two reasons.  Like *Red Diamond*, this case did

not involve price fixing.  Instead, it addressed a sports equipment manufacturer's

requirement that distributors sell only to consumers or authorized dealers, to

eliminate "bootlegging" by unauthorized retailers and ensure that post-sale service

of equipment was provided for product liability reasons.  *Id.* at 788.  In addition,

the manufacturer did not compete against its retailers, and thus the court did not

consider whether horizontal aspects of a vertical relationship should be considered

vertical.  *Id*.

The other cases Defendants cite in support of their argument also do not

involve price restraints.  (Mot. to Dismiss at 12-13, citing *Business Elecs. Corp. v.*

---

[5] Defendants misrepresent *Red Diamond* as "binding" authority on this Court.
(Mot. to Dismiss at 5.)  Whether non-price restraints agreed upon by dual
distributors with their distributors/retailers would be considered vertical or
horizontal under the Sherman Act was not adjudicated.  The claims in *Red
Diamond* were brought under Louisiana, not federal, law.  *Red Diamond*, 637 F.2d
at 1003 (the sole antitrust claim before us is one arising under Louisiana law").

*Sharp Elecs. Corp.*, 485 U.S. 717 (1988) (holding that agreement between supplier

and dealer to terminate another dealer was not a price restraint);[6] *AT&T Corp. v.*

*JMC Telecom, LLC*, 470 F.3d 525, 528 (3rd Cir. 2006) (analyzing agreement

limiting plaintiff's sales to maritime customers); *Electronics Commc'ns Corp. v.*

*Toshiba Am. Consumer Prods., Inc*., 129 F.3d 240 (2nd Cir. 1997) (analyzing

exclusive distribution agreement).)

     Other than *McKesson*, the issue of whether to treat minimum price restraints

between horizontal competitors who are also in a vertical relationship as purely

vertical has rarely been addressed.  The reason for the absence of authority on the

point is that this distinction has not mattered, and still does not matter.[7]  All

---

[6] Defendants' reliance on *Business Electronics* for the proposition that "[a] manufacturer agreement with [a] distributor to terminate another distributor for price cutting is not a *horizontal* price restraint," (Mot. to Dismiss at 10 (emphasis added)), is patently misleading.  The Court in *Business Electronics* did not even consider the issue of whether an agreement between distributors and a supplier who also competes with its distributors is horizontal.  *Business Electronics* simply held that an agreement between a supplier and a distributor to terminate another distributor for failing to adhere to a unilateral resale price maintenance agreement was not an agreement *on price* at all.  *Business Elecs.*, 485 U.S. at 726-27, 735-736.  Accordingly, the holding in *Business Electronics* has nothing to do with the issue presented here.

[7] In *AT&T Corp.*, *Electronics Communications*, and *Red Diamond*, the characterization of the restraint at issue as vertical or horizontal determined whether per se or rule of reason analysis would apply.  As discussed above, the non-price restraints at issue in those cases, if between competitors, were per se

*(footnote continued on next page)*

minimum price restraints, whether vertical or horizontal, are per se illegal; and thus, there have been few cases where the distinction has mattered, or even been addressed.[8]

Defendants' motive in pursuing this issue now appears to be based on an anticipation that the Supreme Court will overrule per se treatment of vertical resale price maintenance in *Leegin*.  *See* Pet'r Br. in *Leegin*, 2007 WL 160780 (Jan. 22, 2007).  But *Leegin* has not yet changed the per se standard for evaluating vertical minimum resale price restraints (and perhaps never will).  Moreover, *Leegin* apparently does not raise the issue of whether a manufacturer that also competes with its distributors is capable of horizontal price fixing with its distributors.[9] Accordingly, the rule set forth in *McKessen* is not likely to be addressed in *Leegin*.

_____

*(footnote continued from previous page)*

illegal, while the same restraints between parties in a vertical relationship were governed by the rule of reason.  In other words, what antitrust analysis to apply -- per se or rule or reason -- turned on whether the agreements were deemed horizontal or vertical.

[8] See discussion at p.9, *supra*, of *Interphoto*, 295 F. Supp. 711, and *Chock Full O'Nuts*, 83 F.T.C. 575.

[9] The Respondent in *Leegin* (the plaintiff at the trial court) has raised for the first time on appeal, that its case involves both horizontal and vertical restraints.  (*See* Pet'r Reply Br. on Certiorari, 2006 WL 3379539 (Nov. 20, 2006), at *2-4).  Because the issue was not litigated below, it is unlikely to be addressed by the Supreme Court.

Finally, even if the Supreme Court were to address it, it is unlikely to change the *McKesson* rule, because price fixing in a dual horizontal-vertical setting "makes the antitrust violation even more pernicious." *See e.g., Interphoto*, 295 F. Supp. at 718 n.2.[10]

In short, controlling authority dictates that TPX's agreements with retailers with whom it competes are not the functional and legal equivalent of vertical agreements. Defendants' citation to inapposite case law involving non-price restraints cannot overcome this precedent. For these reasons, their motion should be rejected.

---

[10] There are sound economic reasons why the *McKesson* rule should not be changed, no matter the outcome in *Leegin*. The Petitioners in *Leegin* essentially contend that the per se rule of *Dr. Miles* should be abandoned because vertical price restraints can have compelling efficiency justifications, like non-price restraints. Plaintiffs would dispute that any such arguments exist here. Moreover, it is clear that a manufacturer's economic motivations change dramatically when it is also a retailer. While a manufacturer does not typically want higher sales prices for its product because higher prices mean lower sales volume, *see, e.g., Red Diamond*, 637 F.2d at 1004 n.4, that is not true when the manufacturer is also a retailer. The reason, of course, is that the higher retail prices lead to more revenue for the manufacturer-retailer, which can offset any loss in sales volume.

**D.**     **Plaintiffs Need Not Allege Agreement Among Distributors to State a Horizontal Conspiracy Claim Between Distributors and a Manufacturer that Directly Competes with Distributors.**

Defendants also argue that horizontal price fixing agreements between a manufacturer and its distributors must be dismissed unless the plaintiff also alleges an agreement *among* the distributors themselves.  (Mot. to Dismiss at 13-15.) Defendants misapprehend the meaning of the cases they cite.

Defendants essentially claim that a "hub-and-spoke" conspiracy between a supplier and its distributor is not cognizable as horizontal price fixing unless it is, in fact, a "hub-and-spoke-*and-rim*" conspiracy.  (*Id.*)  Defendants claim that a plaintiff must allege a "rim" (*i.e.*, an agreement between the individual distributors) to state a claim.  (*Id.*)  But the cases Defendants cite are again inapposite, because they deal with a different set of facts and claims than those alleged here.

The cited cases involve allegations of horizontal price fixing among distributors, in factual situations where there could be no horizontal agreement between the hub (typically, the manufacturer) and its spokes (typically the distributors) because the hub did not compete at the level of the spokes.  *See Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939) ("hub" movie house did not compete at level of the "spoke" distributors); *Toys "R" Us, Inc. v. F.T.C.*,

-17-

221 F.3d 928 (7th Cir. 2000) (manufacturers allegedly agreed with major retailer to boycott other retailers; manufacturers did not compete at the retail level); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2nd Cir. 2002) (alleged group boycott of one manufacturer by distributors at insistence of another manufacturer; instigating manufacturer did not participate at distributor level); *Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002) (alleged restraint on software modification; software developer did not compete at the hardware manufacturer level); *Spectators' Commc'n Network, Inc. v. Colonial Country Club*, 253 F.3d 215 (5th Cir. 2001) (alleged group boycott of broadcaster by sponsors of golf association; golf association did not compete at sponsorship level); *Royal Drug Co. v. Group Life & Health Ins. Co.*, 737 F.2d 1433 (5th Cir. 1984) (alleged price fixing of drug prices; insurer did not compete at same level as pharmacies); *United States v. Chandler*, 388 F.3d 796 (11th Cir. 2004) (alleged criminal mail fraud conspiracy; the spokes of the conspiracy were only connected through the hub, and thus no conspiracy could be alleged between the spokes).

None of these cases remotely suggests what Defendants claim here: that a plaintiff, who alleges that a manufacturer/distributor fixed prices with its direct horizontal-competitor distributors, must also allege that the distributors have an agreement among themselves to state a claim for horizontal price fixing. The cited

cases simply stand for the rather unremarkable proposition that in order to claim horizontal price fixing, there must be some agreement between horizontal competitors.  If a manufacturer does not compete against its distributors -- as they did not in the cited cases -- the only other possibility for horizontal collusion is if the distributors conspire among themselves.  While that may be true, it is irrelevant to the horizontal claim made here.

Here, Plaintiffs allege TPX directly competes with its retailers, (Compl. ¶ 10), and thus, its agreements with each of them constitute horizontal price fixing. Because that critical element is missing from all of the cases Defendants cite, they are wholly irrelevant.

### E.   Count III Properly States a Claim Under Section 1.

In Count III of the Complaint, Plaintiffs allege that TPX's agreements with its retailers violate Section 1 of the Sherman Act as an unreasonable restraint of trade.  (Compl. ¶¶ 55-62.)  As discussed above in Section I, Plaintiffs bring this count in an abundance of caution to ensure that all appropriate factual allegations have been made to state a rule of reason claim.  *Int'l Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904, 907 (6th Cir.1989) (outlining elements of a rule of reason claim).  In the Complaint generally, and Count III in particular, Plaintiffs have alleged all the elements of a Section 1 rule of reason claim against

Defendants. Nothing more is required, and Defendants' motion as to Count III

should also be denied.

## III.    <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss should be

denied.

Dated: March 12, 2007                          Respectfully Submitted,


      /s/ Craig G. Harley      
Martin D. Chitwood
Craig G. Harley
James M. Wilson, Jr.
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone:  (404) 873-3900
Fax:  (404) 876-4476

Robert K. Finnell
THE FINNELL FIRM
One West Fourth Street
Suite 200
Rome, GA  30167
Phone:  (706) 235-7272
Fax:  (706) 235-9461

Philip D. Bartz
Cameron Cohick
Donna M. Donlon
Stephen M. Lastelic
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
Phone:  (202) 496-7500
Fax:  (202) 496-7756

COUNSEL FOR PLAINTIFFS

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of

Georgia, counsel for Plaintiffs certifies that PLAINTIFFS' OPPOSITION TO

DEFENDANTS' MOTION TO DISMISS was prepared in a font and point

selection approved by the Count and authorized in Local Rule 5.1.


                         /s/ Craig G. Harley

Martin D. Chitwood

Craig G. Harley

James M. Wilson, Jr.

CHITWOOD HARLEY HARNES LLP

2300 Promenade II

1230 Peachtree Street, N.E.

Atlanta, Georgia 30309

Phone:  (404) 873-3900

Fax:  (404) 876-4476

Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was served via the Court's Electronic Filing System this 12th day of March, 2007 on the following counsel of record.

Jeffrey S. Cashdan
Catherine M. O'Neil
Christine A. Hopkinson
Jonathan R. Chally
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5139

_____/s/ Craig G. Harley_____
Martin D. Chitwood
Craig G. Harley
James M. Wilson, Jr.
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone: (404) 873-3900
Fax: (404) 876-4476

Counsel for Plaintiffs