IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| BENNY and WANDA JACOBS, on behalf of a class of similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 4:07-CV-002(HLM) |
| v. | ) ) ) | |
| TEMPUR-PEDIC INTERNATIONAL, INC. and TEMPUR-PEDIC NORTH AMERICA, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION TO DISMISS**

Jeffrey S. Cashdan
Georgia Bar No. 115775
Catherine M. O'Neil
Georgia Bar No. 553714
Christine A. Hopkinson
Georgia Bar No. 142106
Jonathan R. Chally
Georgia Bar No. 141392
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5139

Counsel for Defendants
TEMPUR-PEDIC INTERNATIONAL INC. and
TEMPUR-PEDIC NORTH AMERICA, INC.

## INTRODUCTION

Defendants Tempur-Pedic International Inc. and Tempur-Pedic North America, Inc. ("TPX") demonstrated in their Motion to Dismiss that Plaintiffs' horizontal conspiracy claims are insufficiently pleaded as a matter of law. In opposition, Plaintiffs characterize Defendants' position as suggesting that "all horizontal aspects of a dual horizontal--vertical relationship should be treated as vertical." (Plfs' Opp. at 10.) But that is not the point at all. More fundamentally, Defendants' position is that the relevant inquiry on a motion to dismiss is what type of restraint underlies the claims alleged in the Complaint.

Here, the central allegation of the Complaint is that TPX has entered into multiple "*resale* price fixing agreements" with TPX retailers and distributors. Complaint ¶¶ 34, 47 (emphasis added). It is these alleged "agreements" that form the basis for each and every claim in the Complaint. Such "resale price agreements" are vertical in nature, because the source is the manufacturer.

Clearly, vertical restraint claims may be brought based on the Complaint's allegations of "resale price fixing agreements." For this reason, TPX did not move to dismiss Count I. The question raised here, however, is whether these very same allegations of vertical "resale price fixing agreements" sufficiently support Plaintiffs' horizontal conspiracy claims -- which are premised on the

-2-

existence of a purported nationwide conspiracy involving all TPX retailers and distributors.  The Eleventh Circuit's binding precedent clearly establishes that the alleged presence of such vertical agreements is *not* enough to state a claim: "Conspiracies between a manufacturer and its distributors are only treated as horizontal . . . when the source of the conspiracy is a combination of the distributors."  *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*, 637 F.2d 1001, 1004 (5th Cir. Feb. 23, 1981) (citation omitted).  *See also Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir. 1984) (citing *Red Diamond Supply, Inc.* for this proposition in federal antitrust action).

    As Plaintiffs concede, the Complaint does not allege an agreement among TPX and each TPX retailer and distributor throughout the country.  The Complaint does not allege restraints imposed at the urging of TPX distributors and retailers.  Rather, the Complaint alleges fairly typical vertical resale price maintenance claims.  Thus, the horizontal claims -- Count II and, to at least some extent, Count III -- should be dismissed.

## ARGUMENT

### I. PLAINTIFFS' ALLEGATIONS OF BILATERAL VERTICAL "RESALE PRICE FIXING AGREEMENTS" ARE INSUFFICIENT TO STATE A CLAIM ALLEGING A NATIONAL HORIZONTAL CONSPIRACY.

In their initial memorandum, Defendants presented the clear and binding law establishing that mere allegations of vertical resale price agreements are insufficient to state horizontal conspiracy claims, even where the manufacturer also sells directly to consumers. Defendants' Memorandum of Law at 11-15. Plaintiffs attempt to avoid the binding effect of *Red Diamond Supply* by arguing that the "claims in *Red Diamond* were brought under Louisiana, not federal law." Plfs' Opp. at 13 n. 5. But, of course, in deciding the claims in that action, the Fifth Circuit "proceed[ed] under the guidance of federal law, and in particular the law of [the] circuit." *Red Diamond Supply*, 637 F.2d at 1003. Removing any doubt concerning the binding nature of this decision in federal antitrust actions in the Eleventh Circuit, *Red Diamond Supply* has been cited by the Eleventh Circuit itself on the very point at issue. *See Midwestern Waffles*, 734 F.2d at 711 ("[T]o prove that Waffle House's allocation of territories, each of which is an exclusive territory, is a horizontal restriction, plaintiffs will have to show that Waffle House and those of its franchisees alleged to be part of the combination or conspiracy

-3-

***agreed among themselves*** as to the division of territories. . . . That Waffle House itself operates restaurants in certain territories does not, alone, change the standard of analysis." (emphasis added)).

Plaintiffs also contend that this Court should ignore the holding of *Red Diamond Supply* and other cases Defendants cite because they involve non-price restraints. Plfs' Opp. at 12-14. This makes absolutely no sense. In actions involving non-price restraints, the decision whether to characterize a restraint as vertical or horizontal is often dispositive, because certain horizontal non-price restraints are condemned *per se* while the same non-price restraints in the vertical context are analyzed under the rule of reason. Thus, in non-price restraint cases, the courts are keenly focused on the precise characterization of the restraint at issue. Far from being inapposite, then, the holdings in these cases are very instructive.

Plaintiffs also point out, correctly, that the characterization of a price restraint as vertical or horizontal traditionally has been of little moment, because all such restraints were treated as *per se* unlawful under either scenario. The law concerning vertical price restraints has changed, however, and continues to change. Maximum resale price agreements are no longer *per se* unlawful, and, as noted previously, the Supreme Court is now considering whether to abolish the *per se*

rule as to minimum resale price agreements as well. Thus, even in cases alleging price restraints, the characterization of the restraint as horizontal or vertical is now extremely important, because the appropriate characterization of the restraint may have substantive consequences. Moreover, in this case, the class certification challenge -- already formidable -- will increase dramatically if Mr. and Ms. Jacobs, alone, are asked to represent all consumers in a horizontal conspiracy action premised on the existence of multiple bilateral resale price "agreements."

For these reasons, it is particularly appropriate for this Court to draw upon the controlling and helpful precedent Defendants have cited to carefully assess the nature of the restraint involved in Plaintiffs' claims. Upon doing so, this Court should conclude that Plaintiffs have failed to state horizontal conspiracy claims.

## II. PLAINTIFFS' RELIANCE ON *UNITED STATES V. MCKESSON & ROBBINS, INC.*, IS MISPLACED.

In their opposition, Plaintiffs argue that the Supreme Court's holding in *United States v. McKesson & Robbins, Inc.*, 351 U.S. 305 (1956), compels denial of the Motion to Dismiss. That is quite a stretch.

The relevant statutes at issue in *McKesson* provided an exemption from antitrust scrutiny for certain agreements setting minimum prices, expressly

excluding from the exemption any "contract or agreement . . . between wholesalers . . . or corporations in competition with each other." *Id.* at 311. The Court explained that "[t]he issue presented is a narrow one of statutory interpretation [under the Miller-Tydings Act and the McGuire Act.]" *Id.* at 309. McKesson conceded that, absent application of this exemption, it violated the Sherman Act. *Id.* at 312. Thus, the only issue before the court was a construction of these exemption statutes, and specifically whether the defendant was "in competition" with the entity with which it agreed to set prices. *Id.* at 310-13.

The issue of distinguishing between horizontal and vertical agreements under Section 1 of the Sherman Act, however, was never before the Court. As Professors Areeda and Hovenkamp explain, "[b]ecause [*McKesson*] lies in the tradition of narrowly interpreting the fair trade exemption, it has little bearing on the present problem" of classifying dual-distribution restraints. Areeda & Hovenkamp, *Antitrust Law* Vol. VIII, ¶ 1605b, at 71 (2d ed. 2004). While the *McKesson* court focused on determining whether, under the statutory scheme at issue, McKesson was "in competition" with other wholesalers, the court never addressed -- nor was it asked to address -- the more delicate question of whether the particular restraint was properly characterized as vertical or horizontal for substantive antitrust law purposes. As the case law Defendants cite explains, this

-6-

important characterization question depends on the source of the restraint, not merely on whether the manufacturer has a dual-distribution arrangement.

Plaintiffs also overstate *Interphoto Corp. v. Minolta Corp.*, 295 F. Supp. 711 (S.D.N.Y. 1969), and the decision of the Federal Trade Commission in *In re Chock Full O'Nuts Corp.*, 83 F.T.C. 575, 1973 WL 165278 (1973). Plaintiffs quote and rely on dicta from the *Interphoto* opinion, in which the court also expressly acknowledged that plaintiff there "[did] not . . . stress the horizontal aspects of price-fixing by [the defendant] and its co-distributors." *Interphoto*, 295 F. Supp. at 718. Notably, immediately following the cited language, the *Interphoto* court analyzed the price restraint at issue as a vertical restraint. *Id.* at 718-19.

The FTC's decision in *Chock Full O'Nuts*, which is clearly not binding on this Court, includes only one parenthetical remotely relevant to this case. The FTC concluded that "[a]greements to fix prices, whether vertical or horizontal (and these agreements are both), are illegal *per se*." *Chock Full O'Nuts*, 1973 WL 165278 at *47. The FTC did not explain this parenthetical, and it was certainly not relevant to the FTC's decision condemning the defendant's activity. *Id.* These casual references in *Interphoto* and *Chock Full O'Nuts* simply cannot override the overwhelming weight of authority demonstrating that Plaintiffs' bare bones "competition" allegation is insufficient to transform an alleged vertical

restraint into a horizontal price-fixing conspiracy. In fact, in their leading treatise, Professors Areeda and Hovenkamp emphasize -- praising the *Red Diamond Supply* decision -- that "dual distribution makes no difference" in determining that a manufacturer-imposed restraint is vertical, not horizontal. Areeda & Hovenkamp, *Antitrust Law* Vol. VIII, ¶ 1605c3, at 75 (2d ed. 2004).

### III. PLAINTIFFS' FAILURE TO ALLEGE AN AGREEMENT AMONG RETAILERS AND DISTRIBUTORS UNDERMINES THEIR ALLEGED NATIONAL HORIZONTAL CONSPIRACY CLAIM.

Defendants demonstrated in their initial memorandum that the Plaintiffs' allegations of multiple bilateral "resale price fixing agreements" are insufficient to state a claim for a horizontal conspiracy because there is no alleged agreement among the various TPX retailers and distributors. Plaintiffs take issue with the hub-and-spoke conspiracy decisions Defendants cite because the "hub" in each of those cases purportedly did not compete with the "spokes." Plfs' Opp. at 17-19. This criticism misses the point. These hub-and-spoke conspiracy cases are not simply concerned with characterization of the restraint as either vertical or horizontal; rather, these cases explain the proof necessary to support a claim for a broad horizontal conspiracy. On this fundamental legal issue, Plaintiffs' Complaint falls short.

Plaintiffs' arguments notwithstanding, the horizontal claims in the Complaint are expressly premised on the existence of a national conspiracy among TPX and all TPX retailers and distributors. This is obvious from the class allegations in the Complaint, which suggest that Plaintiffs Benny and Wanda Jacobs, by themselves, can represent all Tempur-Pedic mattress consumers nationwide who were injured by the horizontal conspiracy. Complaint ¶¶18-25. This is only plausible, of course, if these alleged representative plaintiffs suffered injury from the same horizontal conspiracy as the other class members. Otherwise, Mr. and Ms. Jacobs would be asking this Court to appoint them as representatives of consumers allegedly injured by a conspiracy that had no direct impact on Mr. and Ms. Jacobs at all. The Complaint, on its face, makes no such claim.

As noted previously, there is serious doubt as a matter of law that the vertical "agreements" alleged in the Complaint are sufficient to establish a horizontal conspiracy. Even if these bilateral vertical "agreements" were somehow sufficient to establish bilateral horizontal agreements, however, they would not constitute the single national horizontal conspiracy alleged in the Complaint. To reach that conclusion, there must be some allegation (and ultimately proof) that the TPX retailers and distributors agreed among themselves to restrain trade. Multiple bilateral agreements between TPX and individual retailers are insufficient to

support such a claim, even if the alleged agreements are similar. That is, the hub-and-spoke conspiracy must have some "rim" connecting these various TPX retailers and distributors. *See, e.g., Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939); *Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002); *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 (7th Cir. 2000). With no such "rim" alleged, the Complaint's horizontal conspiracy claims must be dismissed.

## CONCLUSION

For these reasons, in addition to the reasons described in TPX's Memorandum of Law in Support of its Motion to Dismiss, Plaintiffs' horizontal claims in Count II and Count III should be dismissed.[1]

---

[1] Plaintiffs suggest that Count III of the Complaint is simply intended to assert a vertical minimum resale price fixing claim in the event the Supreme Court determines the rule of reason should govern such claims. Plfs' Opp. at 4. Count III, however, is not so limited on its face. Defendants only seek to dismiss Count III to the extent it purports to state horizontal conspiracy claims.

Dated: April 12, 2007

Respectfully submitted:

/s/ Christine A. Hopkinson
Jeffrey S. Cashdan
Georgia Bar No. 115775
Catherine O'Neil
Georgia Bar No. 553714
Christine A. Hopkinson
Georgia Bar No. 142106
Jonathan R. Chally
Georgia Bar No. 141392

KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5139
Email of filer: chopkinson@kslaw.com

Counsel for Defendant
TEMPUR-PEDIC INTERNATIONAL INC.
and TEMPUR-PEDIC NORTH AMERICA,
INC.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of Georgia, counsel for Tempur-Pedic International Inc. and Tempur-Pedic North America, Inc. certifies that **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1C.

/s/ Christine A. Hopkinson
Christine A. Hopkinson

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** was served via the Court's Electronic Filing System this 12th day of April, 2007 on the following counsel of record:

Martin D. Chitwood
Craig G. Harley
James M. Wilson, Jr.
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309

Philip D. Bartz
Cameron Cohick
Donna M. Donlon
Stephen M. Lastelic
MCKENNA LONG ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006

Robert K. Finnell
THE FINNELL FIRM
One West Fourth Street
Suite 200
Rome, Georgia 30167

/s/ Christine A. Hopkinson
Christine A. Hopkinson
Georgia Bar No. 142106