FILED IN CHAMBERS
U.S.D.C. Rome

JUN 21 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

BENNY and WANDA JACOBS, on behalf of a class similarly situated,

    Plaintiffs,

v.

TEMPUR-PEDIC INTERNATIONAL, INC., and TEMPUR-PEDIC NORTH AMERICA, INC.,

    Defendants.

CIVIL ACTION

NO. 4:07-CV-02-RLV

O R D E R

This is an antitrust action, in which the plaintiffs allege that the defendants are violating section 1 of the Sherman Act, 15 U.S.C. § 1. Pending before the court is the defendants' motion to dismiss Counts 1 and 2 of the complaint [Doc. No. 17].

I. FACTUAL BACKGROUND[1]

In the early 1970's the National Aeronautic and Space Administration developed a visco-elastic memory foam and later released this technology to the public, Tempur-Pedic International, Inc., along with its parents and subsidiaries

---

[1] On a motion to dismiss, the court accepts the allegations of the complaint as being true and views them in a light most favorable to the plaintiff. Castro v. Secretary of Homeland Security, 472 F.3d 1334 (11th Cir. 2006). Consequently, the facts set out are drawn from the plaintiffs' complaint.

(hereinafter "TPX")[2] further developed this foam technology and introduced its own version of the foam in 1991 for home and medical use. Today, TPX manufactures and sells a variety of products made from this foam, including premium foam mattresses.

Tempur-Pedic mattresses are sold at "full prices" because TPX requires distributors to agree to adhere to a minimum resale price set by TPX and not to discount the price. In addition to distributing its mattresses through third-party distributors, TPX also sells mattresses directly to the public at the same prices it has agreed with its distributors to charge.

On November 7, 2005, the plaintiffs purchased a Tempur-Pedic mattress from a TPX distributor in Rome, Georgia, paying $2793.97, plus tax, for the mattress. The plaintiffs allege that this price is artificially inflated because of agreements entered into between TPX and its distributors that allow TPX to set the prices at which the distributors must sell Tempur-Pedic mattresses. Consistent with these resale pricing agreements, Tempur-Pedic distributors

---

[2] The defendants note that even though they are separate legal entities, the plaintiffs refer to them in the complaint as the single entity "TPX." However, they, and the court, will accept the characterization of the defendants as a single entity for purposes of the pending motion.

often advertise that they sell at "lowest factory authorized pricing" or at the "Lowest Possible Price."

According to the complaint, these agreements between TPX and its distributors result in there being virtually no price competition among the retailers and dealers in the sale of Tempur-Pedic mattresses. Consistent with these minimum resale pricing agreements, the actual retail sales prices of Tempur-Pedic mattresses vary little nationally, whether sold over the internet or through brick-and-mortar retailers.

## II. LEGAL DISCUSSION

The plaintiffs have filed a putative class action complaint, in which they assert three causes of action: Count 1 for Resale Price Maintenance/Conspiracy to Fix Prices, in violation of section 1 of the Sherman Act; Count 2 for Horizontal Price-Fixing, in violation of section 1 of the Sherman Act; and Count 3 for Unreasonable Restraint of Trade in the Visco-Elastic Mattress Market, in violation of section 1 of the Sherman Act. Without conceding the viability of Count 1, TPX has moved to dismiss Counts 2 and 3 on the basis that the allegations in the complaint are insufficient to show horizontal price fixing.

The starting point for this court's analysis is Red Diamond Supply, Inc. v. Liquid Carbonic Corp., 637 F.2d 1001 (5th Cir. 1981).[3] In that case, the district court had charged the jury that the alleged conspiracy was a horizontal one because the manufacturer had sold some of its products directly to customers in competition with its distributors. The court of appeals reversed and quoted the following language from H & B Equipment Co. v. International Harvester Co., 577 F.2d 239, 245 (5th Cir. 1978): "Conspiracies between a manufacturer and its distributors are only treated as horizontal . . . when the source of the conspiracy is a combination of the distributors." "When the manufacturer is the source, the conspiracy is vertical." Red Diamond, 637 F.2d at 1004. The court went on to say:

> That Liquid [the manufacturer] also distributed some of its own goods does not alter the situation. See Arnold, Schwinn & Co., 388 at U.S. at 369-72, 87 S.Ct. at 1860-1862 (territorial and customer restrictions imposed

---

[3] Although TPX characterizes this case as being "[b]inding law of this circuit," the plaintiffs are technically correct in noting that it is not binding, since the Red Diamond court was dealing with Louisiana antitrust laws. However, that court was careful to point out that the Louisiana laws were fashioned after section 1 of the Sherman Act and "except for the federal interstate commerce requirement, the same principles of law apply under both." Consequently, "we will proceed under the guidance of federal law, and in particular the law of this circuit." 637 F.2d at 1003. Thus, though not binding, the reasoning in Red Diamond is certainly very persuasive.

4

by a manufacturer on its wholesale distributors are vertical even though the manufacturers also distributed directly to retailers). . . .

637 F.2d at 1004.

The conclusion that manufacturer-distributor chains should be viewed as vertical, not horizontal, in nature also finds support in Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc., 710 F.2d 752 (11th Cir. 1983), where the court specifically cited to *Red Diamond*, *H & B Equipment*, and Daniels v. All Steel Equipment, Inc., 590 F.2d 111 (5th Cir. 1979). Additionally, in Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705 (11th Cir. 1984), the Eleventh Circuit considered the corporate framework of Waffle House, Inc., which operates stores on its own and through franchisees, and concluded that the territorial allocations of Waffle House "should be viewed as though they are vertical." 734 F.2d at 720.[4] Based on these cases and because the plaintiffs do not allege the existence of any agreement solely among the distributors of Tempur-Pedic products, this court concludes that Counts 2 and 3 fail to state a claim for horizontal price fixing.

---

[4] The court recognizes that the cases cited deal with trade restrictions, not price restrictions. However, the plaintiffs have not shown how this aspect of the cases warrant a different treatment.

5

United States v. McKesson and Robbins, Inc., 351 U.S. 305, 76 S.Ct. 937 (1956), relied on by the plaintiffs, does not require a contrary result. That case dealt with the narrow issue of whether the "fair trade" exemption from the Sherman Act authorized by the Miller-Tydings Act and the McGuire Act (since repealed) applied to McKesson and Robbins. These Acts expressly excluded from their exemption from the antitrust laws contracts "between wholesalers" or "between persons, firms, or corporations in competition with each other." The government argued that since McKesson and Robbins sold its products directly to the public and also through distributors, it was "in competition with" its distributors and, thus, did not fall under the exemption.

The Supreme Court agreed with the government and held that McKesson and Robbins could be found liable for violating section 1 of the Sherman Act. However, this narrow ruling does not mean that all dual distribution agreements are to be treated as horizontal, rather than vertical. To hold otherwise would mean that this court would have to discount all the Fifth Circuit and Eleventh Circuit cases that came after *McKesson and Robbins* and which concluded that such agreements are to be treated as horizontal. This court is not prepared to ignore those cases.

6

For the foregoing reasons, the defendants' motion to dismiss [Doc. No. 17] is GRANTED, and Counts 2 and 3 are dismissed to the extent that they purport to state claims for horizontal price fixing.

SO ORDERED, this 21st day of June, 2007.

/s/ Robert L. Vining, Jr.
ROBERT L. VINING, JR.
Senior United States District Judge