IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| BENNY and WANDA JACOBS, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Case No. 4:07-cv-002 (RLV) |
| | : |
| TEMPUR-PEDIC INTERNATIONAL, INC. | : |
| and TEMPUR-PEDIC NORTH AMERICA, INC. | : |
| | : |
| Defendants. | : |
| | : |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS COUNTS I & III OF PLAINTIFFS' COMPLAINT**

Robert K. Finnell
THE FINNELL FIRM
One West Fourth Street
Suite 200
Rome, GA  30167
Phone:  (706) 235-7272
Fax:  (706) 235-9461

Martin D. Chitwood
Craig G. Harley
James M. Wilson, Jr.
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone:  (404) 873-3900
Fax:  (404) 876-4476

Philip D. Bartz
Cameron Cohick
Donna M. Donlon
Stephen M. Lastelic
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 496-7500
Fax: (202) 496-7756

COUNSEL FOR PLAINTIFFS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .............................................................................................1

II.    PLAINTIFFS' CLAIM FOR UNLAWFUL VERTICAL PRICE
       FIXING ..........................................................................................................2

III.   PLAINTIFFS PROPERLY STATE A CLAIM FOR UNLAWFUL
       VERTICAL PRICE FIXING UNDER THE RULE OF REASON ...............3

       A.    Plaintiffs Allege Actual Anticompetitive Effect Caused by
             Tempur-Pedic's Artificial Price Increases; Thus, Allegations of
             Market Power in a Relevant Market Are Not Required.......................4

             1.    If a Plaintiff Alleges Actual Anticompetitive Effect,
                   Relevant Market Allegations Are Unnecessary........................4

             2.    Plaintiffs' Allegations that Tempur-Pedic and its
                   Distributors Charged Elevated Prices Satisfy the Rule of
                   Reason Requirement for Actual Anticompetitive Effect...........6

             3.    The Leegin Decision Does Not Alter This Standard ................8

       B.    Even if a Market Power Analysis Were Required, Plaintiffs
             Have Properly Alleged Relevant Markets Both Under the
             Applicable Standard and Under the Heightened Standard
             Tempur-Pedic Proposes....................................................................10

             1.    The Complaint Meets Applicable Pleading Requirements
                   by Alleging a Plausible Relevant Market: Visco-Elastic
                   Foam Mattresses. ...................................................................11

             2.    The Complaint Contains Additional Factual Allegations
                   Establishing that its Product Market Is Plausible ...................19

IV.    CONCLUSION...............................................................................................21

CERTIFICATE OF COMPLIANCE....................................................................23

## I.    __INTRODUCTION__

Plaintiffs Benny and Wanda Jacobs properly allege that Defendants Tempur-Pedic International, Inc., and Tempur-Pedic North America, Inc. (collectively, "Tempur-Pedic") engaged in an illegal price-fixing conspiracy to set the minimum prices of their visco-elastic mattresses in violation of Section 1 of the Sherman Act.  The Supreme Court recently held in *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, No. 06-480, 551 U.S. __ (June 28, 2007) that vertical price-fixing claims must be measured under the "rule of reason" standard, which requires averments concerning anticompetitive effect.  Consistent with this requirement, the Jacobs allege in Count I and Count III that Tempur-Pedic's actions unreasonably restrain trade by actually harming competition in the visco-elastic foam mattress market.  Such allegations are sufficient at the pleading stage to establish anticompetitive effect under the rule of reason standard.  In its motion, Tempur-Pedic completely ignores the allegations of actual harm to competition made throughout the Complaint, including in Count I.

Rather, Tempur-Pedic devotes its entire motion to the Complaint's purported failure to meet an *alternative*, but in this case, unnecessary, standard of measuring an allegation of anticompetitive effect: pleading a relevant product and geographic market and alleging that the defendant had sufficient market power in that market

to potentially affect competition.  The Jacobs' allegation that Tempur-Pedic holds 80-90% of the United States market for visco-elastic foam mattresses -- which are physically different from and much more costly than traditional innerspring mattresses -- easily satisfies this standard as well.  Accordingly, Defendants' motion to dismiss should be denied in its entirety.

## II.  <u>PLAINTIFFS' CLAIM FOR UNLAWFUL VERTICAL PRICE FIXING</u>

As a threshold matter, Tempur-Pedic moves to dismiss Count I by erroneously claiming that this Count was premised solely on the "per se" standard: "it clearly alleges a per se violation of the Sherman Act based on alleged vertical agreements between Tempur-Pedic and its retailers to set prices" and therefore must be dismissed in light of *Leegin.*  (Mem. of Law in Supp. of Mot. to Dismiss Counts I & III of Plfs. Compl. (Dkt. # 43-2) ("Mot.") at 3.)  This argument is misdirected.

*Leegin* changed the standard for *deciding* a minimum resale price claim; it did not change the standard for *pleading* a rule of reason violation.  As discussed in Section III below, Count I not only states a per se claim, it also clearly states a claim under the rule of reason standard by specifically alleging anticompetitive effect in a relevant market.  (*See* Compl. (Dkt. #1), Count I, ¶ 47.)  Because Count I also sets forth each other element of a rule of reason claim and these allegations

meet the requirements of Rule 8(a), dismissal of Count I under Rule 12(b)(6) is not appropriate.

Indeed, Counts I and III are based on the same illegal anticompetitive conduct of Tempur-Pedic, *i.e.*, unlawful vertical price fixing.  Plaintiffs included two separate counts in the Complaint because Tempur-Pedic's illegal conduct implicated two potentially applicable legal standards.  Count III adds explicit geographic and product market allegations -- allegations which only potentially became relevant after the Supreme Court overruled the per se standard in *Leegin*.

As discussed below, allegations that Tempur-Pedic held market power in a specific geographic and product market are not necessary to allege anticompetitive effect if actual harm is alleged, as it is here.  These additional allegations were included in the alternative as a separate count in the interest of clarity in the face of a possible change in legal standards.  As discussed below, to the extent that this Court determines that market power in a relevant market should be examined, the factual allegations throughout the Complaint, and those contained in Count III, are more than adequate to meet the pleading standard under Rule 8.

III.     <u>PLAINTIFFS PROPERLY STATE A CLAIM FOR UNLAWFUL VERTICAL PRICE FIXING UNDER THE RULE OF REASON.</u>

Plaintiffs sufficiently plead a rule of reason violation of Section 1 of the Sherman Act.  Defendants move to dismiss on the grounds that Plaintiffs have not

sufficiently pled anticompetitive effect in a relevant market because their

"allegation of a single product as a relevant market -- visco-elastic foam mattresses

-- is based solely on conclusory allegations."  (Mot. at 2.)  Defendants' argument is

wrong for two reasons.  First, relevant market allegations are unnecessary if a

plaintiff pleads actual anticompetitive effect, as the Jacobs have done.  Second,

Plaintiffs have made more than sufficient factual allegations of a visco-elastic foam

mattress market.

### A.   Plaintiffs Allege Actual Anticompetitive Effect Caused by Tempur-Pedic's Artificial Price Increases; Thus, Allegations of Market Power in a Relevant Market Are Not Required.

#### 1.   If a Plaintiff Alleges Actual Anticompetitive Effect, Relevant Market Allegations Are Unnecessary.

For a plaintiff to obtain relief on a rule of reason claim under Eleventh

Circuit precedent, a court must determine:

> (1) that the defendant's conduct had an anticompetitive effect on the relevant market; and

> (2) that the defendant's conduct is not pro-competitively justified.

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns., Inc.*, 376 F.3d

1065, 1071 (11th Cir. 2004).

To prove anticompetitive effect on the market, the plaintiff may show *either*:

> (1) that the defendants' behavior had an actual detrimental effect on competition, *or*

> (2) that the behavior had the potential for genuine
> adverse effects on competition.

*Id.* at 1072 (citing *Levine v. Cent. Fla. Med. Affiliates, Inc.,* 72 F.3d 1538, 1551 (11th Cir. 1996)).  Only the second method of documenting anticompetitive effect requires pleading of a relevant market.  *Spanish Broadcasting*, 376 F.3d at 1073 (stating that proof of potential for genuine adverse effects "requires a plaintiff to 'define the relevant market and establish that the defendants possessed power in that market.'") (quoting *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1213 (11th Cir. 2002)).  *Griffiths v. Blue Cross & Blue Shield of Ala.*, 147 F.Supp.2d 1203, 1213 (N.D. Ala. 2001) ("[I]t is not a necessary element of every Section 1 claim that a plaintiff plead and prove the relevant market, even where the rule of reason may be applicable.").

The Supreme Court has explained why proof of market definition and market power are not necessary in the presence of proof of actual detrimental effects on competition:

> Since the purpose of the inquiries into market definition
> and market power is to determine whether an
> arrangement has the potential for genuine adverse effects
> on competition, "proof of actual detrimental effects, such
> as reduction of output," can obviate the need for an
> inquiry into market power, which is but a "surrogate for
> detrimental effect."

*F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460-61 (1986) (quoting P. Areeda, Antitrust Law, ¶ 1511, at 429 (1986)).  Only if a plaintiff cannot prove actual damage to competition does a court turn to "the alternative method" for establishing anticompetitive effect:  the "potential for genuine adverse effects on competition."  *Spanish Broadcasting*, 376 F.3d at 1073 (quoting *Levine,* 72 F.3d at 1551)).  *See also, e.g., Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1367 (3d. Cir. 1996).

Because Plaintiffs are not required to *prove* market power in a relevant market to prevail on their claim, they are not required to *plead* it.  *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (finding that it is incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he might ultimately need to prove to succeed on the merits).

**2.    Plaintiffs' Allegations that Tempur-Pedic and its Distributors Charged Elevated Prices Satisfy the Rule of Reason Requirement for Actual Anticompetitive Effect.**

The Jacobs have alleged that Tempur-Pedic's vertical price-fixing agreements have had an actual anticompetitive effect: the artificial elevation of prices for Tempur-Pedic mattresses.  For example, in their Complaint the Jacobs allege:

> The price paid by Plaintiffs when they purchased their
> Tempur-Pedic mattress from WHHS, and the prices that

all putative class members paid on the purchase of all
Tempur-Pedic mattresses from conspiring distributors,
have been artificially elevated due to the conduct of TPX
and its distributors in eliminating price competition for
TPX mattresses.  On information and belief, consumers
of TPX mattresses, such as Plaintiffs, would have
collectively paid hundreds of millions less over the years
for TPX mattresses if TPX had not prevented its
distributors from competing on price.

(Compl., ¶ 43.)  Plaintiffs further allege that Tempur-Pedic eliminated price

competition in the sales of its mattresses.  (*Id.*, ¶ 47.)  They also allege, "As a result

of the unlawful agreements identified herein, Tempur-Pedic has harmed the

Plaintiffs and all putative class members by overcharging substantially for

Tempur-Pedic mattresses."  (*Id.*, ¶ 49.)

The artificial elevation of prices is the most basic form of actual

anticompetitive effect.  *See, e.g.*, *Orson,* 79 F.3d at 1367 ("[P]laintiff may satisfy

this burden by proving the existence of actual anticompetitive effects, such as

reduction of output, *increase in price*, or deterioration in quality of goods and

services . . . .") (emphasis added); *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 210

(3d. Cir. 2005) ("[Plaintiff] bears the initial burden of showing that the alleged

contract produced an adverse, anticompetitive effect within the relevant geographic

market.  This can be achieved by demonstrating that the restraint is facially

anticompetitive or that its enforcement reduced output, *raised prices* or reduced

quality.") (emphasis added).  *See also, e.g., Cal. Dental Ass'n v. F.T.C.*, 526 U.S. 756, 777 (1999) ("[I]t is of course the producers' supply of a good in relation to demand that is normally relevant in determining whether a producer-imposed output limitation *has the anticompetitive effect of artificially raising prices*.") (emphasis added).  These allegations on price, therefore, alone are sufficient to withstand Defendants' motion.

### 3.    The *Leegin* Decision Does Not Alter This Standard.

Defendants ignored the allegations of actual anticompetitive harm in their opening brief.  Nevertheless, they may attempt to inject a new argument on reply: that Plaintiffs' allegations of actual competitive harm are not sufficient after *Leegin*.  That argument would be incorrect for two reasons.

First, and most fundamentally, the Supreme Court said nothing in *Leegin* to suggest that its decision limited the traditional methods plaintiffs use to prove anticompetitive effects.  In fact, the Supreme Court was careful to point out that its decision leaves open this precise issue:

> As courts gain experience considering the effects of these
> restraints by applying the rule of reason over the course
> of decisions, they can establish the litigation structure to
> ensure the rule operates to eliminate anticompetitive
> restraints from the market and to provide more guidance
> to businesses.  Courts can, for example, devise rules over
> time for offering proof, or even presumptions where
> justified, to make the rule of reason a fair and efficient

-8-

way to prohibit anticompetitive restraints and to promote procompetitive ones.

*Leegin*, Slip Op. at 19.

Second, as stated above, the rule of reason requires a showing: (1) of the anticompetitive effect of the defendant's conduct on the relevant market; and (2) that the defendant's conduct has no procompetitive benefit or justification. *Spanish Broadcasting*, 376 F.3d at 1073. *Leegin* changed only the applicability of the second factor, i.e., under the per se standard, procompetitive justifications for vertical price-fixing could not be considered. Allowing defendants the chance to demonstrate procompetitive justifications for resale price maintenance agreements was the reason per se analysis was eliminated in *Leegin*. *See Leegin*, Slip. Op. at 9-12. Whether the first rule of reason factor is proven through actual anticompetitive effect or potential anticompetitive effect (with the requisite market power analysis) does not affect a defendant's ability to present procompetitive justifications for its conduct.[1]

---

[1] Further, requiring proof of market power in a relevant market in a case involving the actual imposition of elevated resale prices makes little sense. Proof of power over a particular product market would merely prove that a supplier had the power to impose a price restraint on its distributors. Proof that the supplier actually imposed the price increase obviates the need for this crude surrogate.

For these reasons, *Leegin* provides no basis for prohibiting plaintiffs from satisfying the first prong of the rule of reason standard by proving actual anticompetitive effect.

**B.    Even if a Market Power Analysis Were Required, Plaintiffs Have Properly Alleged Relevant Markets Both Under the Applicable Standard and Under the Heightened Standard Tempur-Pedic Proposes.**

Even if Plaintiffs were required to allege market power in a relevant market to state a claim under the rule of reason, they have done so -- under either the applicable legal standard, or the heightened standard Tempur-Pedic advocates.

Under applicable law, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, No. 05-1126, 550 U.S. __, 127 S. Ct. 1955, 1974, Slip Op. at 24 (May 21, 2007). The Jacobs meet this standard by alleging a product market consisting of a unique type of product, visco-elastic foam mattresses.

Tempur-Pedic argues that this product market allegation is insufficient "in the absence of factual (rather than conclusory) allegations *establishing* that such a separate product market is in fact plausible." (Mot. at 5 (emphasis added).) As is discussed below, the Defendants' argument misstates the pleading requirements for relevant market allegations. However, even if the heightened burden Defendants seek to impose were applied here, Plaintiffs would meet that standard because they

make the further allegations that visco-elastic foam mattresses are physically different from, and cost significantly more than, other mattresses.

      **1.**    **The Complaint Meets Applicable Pleading Requirements by Alleging a Plausible Relevant Market: Visco-Elastic Foam Mattresses.**

Rule 8(a)(1) of the Federal Rules requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). A complaint must set forth facts sufficient to establish each element of a claim. *Quality Foods de Centro America, S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983). As the Supreme Court has recently illuminated, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 127 S. Ct. at 1965, Slip Op. at 8. "We do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*., 127 S.Ct. at 1974, Slip Op. at 24. Plaintiffs have satisfied this standard by alleging a "visco-elastic foam mattress market." (Compl., ¶ 5.) Defendants identify no factual basis for questioning the plausibility of this allegation.

Notably, Tempur-Pedic does not argue that a visco-elastic foam mattress market is implausible. Defendants are careful to couch their argument solely in terms of a failure in pleading: first, by urging the Court to raise the Plaintiffs'

burden from alleging a facially plausible market to alleging additional facts

"establishing" the plausibility of that market, (Mot. at 5); and second, by

mischaracterizing the alleged market as a "single brand" market, and claiming all

such markets are legally implausible, (Mot. at 13).  Defendants' motion is thus

based solely on a purported technical deficiency in the Complaint and not on the

actual merits of the product market alleged.  Under the Federal Rules, pleading is

not "a game of skill in which one misstep by counsel may be decisive to the

outcome . . . ."  *Conley v. Gibson*, 355 U.S. 41, 48 (1957), abrogated in part by

*Twombly*, 127 S. Ct. 1955.

> Without identifying any factual basis for concluding that a visco-elastic

foam mattress market is implausible, Defendants nevertheless argue that the Jacobs

are required to allege *additional* facts establishing the plausibility of that market.

(Mot. at 8.)  There is no such requirement in the law, and contrary to Defendants'

repeated assertions, the Supreme Court's recent decision in *Twombly* does not

impose this requirement.  *See Twombly*, 127 S. Ct. at 1973-74, Slip Op. at 24.

> A complaint that alleges a plausible relevant market should not be

dismissed.  One district court has explained:

> > Generally, unless the court can conclude that beyond a
> > doubt -- after applying an economic approach which is
> > not subject to serious question and which, if possible, has
> > a sound empirical basis -- that the complainant's theory is

> "economically senseless," the complainant should be
> allowed to proceed with factual development, including
> expert testimony regarding the "economic reality of the
> market issue."

*Storer Cable Commc'ns, Inc. v. City of Montgomery*, 826 F. Supp. 1338, 1348

(M.D. Ala. 1993) (quoting *Eastman Kodak Co. v. Image Tech. Serv., Inc*., 504 U.S.

451, 468-69 (1992)), vacated pursuant to settlement in 866 F. Supp. 1376 (M.D.

Ala. 1993).  *See also Ace Pro Sound & Recording, LLC v. Albertson*, 2007 WL

988867, *8 (S.D. Fla. April 1, 2007) ("[T]he Court highlights that the definition of

a relevant product market is a factual issue, and, thus, must be considerably lacking

in plausibility to be rejected as a matter of law.").

Indeed, while more than simple facial plausibility is not required of any

complaint, *Twombly*, 127 S. Ct. at 1973-74, Slip Op. at 24, such a requirement

would be particularly unworkable for market allegations due to their fact-intensive

nature.  *See, e.g., United States v. Engelhard Corp.,* 126 F.3d 1302, 1305 (11th Cir.

1997) (stating that "the definition of the relevant market is essentially a factual

question . . . . [In determining the relevant market], the finder of fact normally is

presented with voluminous expert testimony and other evidence.  In such a

situation, its factual findings are accorded great deference." (internal quotation

marks omitted)); *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th

Cir. 1993) (stating that definition of relevant market is essentially a fact question);

-13-

*Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d. Cir. 2001) ("Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market."); *Moecker ex rel. Vehicle Safety Sys., Inc. v. Honeywell Int'l, Inc.*, 2000 WL 33996256, *2 (M.D. Fla. 2000) (rejecting defendant's contention that plaintiff "ignored considerations of product interchangeability and cross elasticity," and stating "the questions raised by Defendant . . . are questions and issues that will require the Court to make factual determinations, a determination ill suited on a motion to dismiss . . . .").

To be sure, Defendants have cited cases that hold, unsurprisingly, that market allegations that are facially implausible can be a basis for dismissal. Defendants claim that these cases, taken in conjunction with *Twombly*, impose a heightened pleading standard requiring plaintiffs to include additional factual allegations supporting the plausibility of the alleged market.  (Mot. at 10.)  For example, if a plaintiff were to allege a facially plausible market consisting of automobiles, the plaintiff would be required to also explain why planes, trains, and motorcycles (and any other mode of transport) were not included in the market definition.  That is not the import of these cases.

Each of these cases involves product markets so obviously under-inclusive that their facial implausibility was easily recognized.  In that context, additional

allegations acknowledging obvious substitutes or interchangeability were

necessary to explain why the particular market alleged might nevertheless be

appropriate:

- *Tanaka v. Univ. of S. Calif.*, 252 F.3d 1059, 1063-64, involved a product market defined as the "UCLA women's soccer program." The court found this limitation unavailing "insofar as the very existence of any given intercollegiate athletic program is predicated upon the existence of a field of competition composed of other, similar programs." *Id.* Because such programs compete in recruiting student athletes, and, according to the allegations, actually competed to recruit the plaintiff herself, such programs should have been included in the relevant product market. *Id.*

- In *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (1997), the plaintiffs did not identify a relevant market. The court concluded, however, that the intended relevant market was the market for ingredients and supplies among Domino's Pizza franchisees. *Id.* at 435. Because the dough, sauce, and paper cups that meet Domino's Pizza's standards were obviously interchangeable with dough, sauce and cups available from other suppliers, this market was rejected. *Id.* at 438.[2]

_____

[2] *See Griffiths*, 147 F.Supp.2d at 1215 (describing *Queen City Pizza* as "fall[ing] within the category of cases where it is obvious that a plaintiff cannot proceed on his Sherman Act claims as stated because his proposed market is drawn in an unduly narrow manner in order to artificially inflate the defendant's power in the relevant market.") (emphasis added).

- In *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 172 (S.D.N.Y. 1995), the plaintiff alleged a chest equalization radiography market but did not explain how that type of x-ray differed from any other kind of x-ray: "[W]ithout pleadings from plaintiffs asserting otherwise, it appears to the Court that chest equalization radiography is not an independent product market, but rather part of the overall X-ray market." *Id.* at 172.

- In *Re-Alco Indus., Inc. v. Nat'l Center for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y 1993), the court rejected the alleged product market, which was limited to the "Growing Healthy" brand of teaching materials. The court found that, "Plaintiff has made no showing why Growing Healthy materials should be considered a market unto themselves, as distinguished from the market suggested by defendants -- all health education materials for elementary schools." *Id.* at 392.

These cases thus address situations in which the plaintiffs' market allegations were *facially* implausible. Similar cases from district courts within the Eleventh Circuit also exist. In *JES Properties, Inc. v. USA Equestrian, Inc.*, 253 F.Supp.2d 1273 (M.D. Fla. 2003), the district court found that the Complaint provided no rationale for why "A" rated hunter jumper horse shoes were unique and not part of the larger market for horse shows. *Id.* at 1282. In the face of this implausible market, the district court pronounced the following rule:

> Where an antitrust plaintiff fails to define its proposed relevant market with reference to rule of reasonable interchangeability and cross-elasticity of demand, *or* alleges a proposed relevant market that clearly does not

-16-

> encompass all interchangeable substitute products even
> when all factual inferences are granted in plaintiffs'
> favor, relevant market is legally insufficient and a motion
> to dismiss may be granted.

*Id*. (emphasis added).[3]  Defendants' argument ignores the second half of this

formulation.  Only if the alleged market *clearly* excludes interchangeable

substitutes, *when all factual inferences are granted in plaintiffs' favor*, should they

be required to make specific allegations relating to interchangeability and cross-

elasticity of demand.  Defendants cite no case that imposes this obligation if the

alleged market is plausible on its face.

    When a relevant market is facially plausible, additional allegations such as

these would only relate to whether the alleged market is *probable*.  But plausibility,

the applicable pleading standard, does not mean probability.  *Twombly,* 127 S.Ct.

at 1965, Slip Op. at 9 ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage . . . .").

---

[3] The district court noted that this was a new rule, never addressed and therefore, not prohibited, by the Eleventh Circuit. *JES Properties*, 253 F.Supp.2d at 1282, n.8 ("[W]hile Eleventh Circuit law states that relevant market is a question of fact, the specific issue of whether there is a per se prohibition against dismissal of antitrust claims for failure to plead relevant market under section 1 of the Sherman Act has not been addressed.").  *But cf. Aventura Cable Corp. v. Rifkin / Narragansett S. Florida CATV Ltd.*, 941 F. Supp. 1189, 1193 (S.D. Fla. 1996) ("Determining the reasonable interchangeability of use . . . is best left for a later stage of the pleadings.") (internal quotation marks omitted).

Defendants make one other attempt to suggest implausibility without actually claiming a visco-elastic foam mattress market is implausible. They do this by characterizing the alleged product market as a "single brand" market and then claiming such a narrow market should be rejected. (Mot. at 9 (claiming alleged market "amounts to a single brand market"); *id.* at 11-12 ("the Complaint effectively seeks to limit the market to Tempur-Pedic itself. . . . These allegations of a single-product market have been rejected by numerous courts at the pleading stage").) This argument blatantly mischaracterizes the Complaint.

Foam mattresses other than Tempur-Pedic brand mattresses are sold in the United States and make up 10-20% of the market. Although Tempur-Pedic now apparently considers itself a total monopolist in the visco-elastic foam mattress market, it is not, as Plaintiffs explicitly allege in the Complaint. (*See* Compl., ¶ 6 ("Upon information and belief, TPX has 80-90% of the sales in the visco-elastic foam mattress market.").) These market-share allegations demonstrate that Plaintiffs allege a market in which there are other manufacturers of visco-elastic foam mattresses besides Tempur-Pedic. Accordingly, this argument should be rejected.[4]

---

[4] In addition, although single-brand or single-product markets are not frequently found, they do exist. *See, e.g.*, *U.S. Anchor*, 7 F.3d at 996, 998 (excluding

*(footnote continued on next page)*

In short, if an alleged relevant market is facially plausible, a plaintiff is not required to allege additional facts establishing its probability as Defendants effectively argue. Because a visco-elastic foam mattress market is facially plausible, Plaintiffs have properly pled a relevant market.

### 2.    The Complaint Contains Additional Factual Allegations Establishing that its Product Market Is Plausible.

Even if Defendants' arguments regarding the applicable pleading standard were correct, Plaintiffs still would meet that standard because they allege additional facts concerning potential interchangeability (i.e., substitutability) of the defendant's product with other mattresses.

Plaintiffs allege in their Complaint the unique attributes of visco-elastic foam mattresses. (*See* Compl., ¶ 2 ("Foam mattresses are relatively new to the marketplace. . . . This foam is temperature sensitive and both resists change of shape (viscous) and returns to its original shape after being forced to change (elastic).").) As Defendants are well aware, innerspring mattresses do not have

---

*(footnote continued from previous page)*

Danforth brand of anchors from market of lower priced anchors and stating "a single branded product may, in rare instances, constitute its own relevant market."); *Storer Cable*, 826 F.Supp. at 1355 ("[T]he Supreme Court recently held that, in some instances, 'one brand of a product can constitute a separate market . . . .'") (quoting *Eastman Kodak*, 504 U.S. at 482).

these attributes.  Distinct physical characteristics are one "practical indicia" of a relevant product market.  *See, e.g., Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) (recognizing product's peculiar characteristics as one of many factors considered in determining relevant product market); *General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F.Supp.2d 1335, 1349-50 (S.D. Fla. 2002) (finding that a relevant market including cigars as distinguished from other tobacco products "based on their distinctive tastes, aromas, size, shape, and other characteristics" was sufficient to withstand motion to dismiss).  This factual allegation satisfies any requirement that the Jacobs plead facts relating to product interchangeability from a physical characteristic standpoint.

In addition, Plaintiffs allege that "Visco-elastic foam mattresses are generally much more expensive than traditional innerspring mattresses and typically cost in the thousands of dollars."  (Compl., ¶ 4.)  Price differences of this kind are also among the chief considerations when determining the relevant market.  *See, e.g., Brown Shoe*, 370 U.S. at 325 (citing distinct prices as a factor when determining relevant product market); *U.S. Anchor*, 7 F.3d at 996 (excluding Danforth brand of higher-priced anchors from market and stating, "the higher prices charged for Danforths are evidence that a distinct group of customers was unwilling to switch away from the prestigious branded product in response to price

-20-

increases above competitive levels."). That consumers pay thousands of dollars for visco-elastic foam mattresses, when traditional innerspring mattresses, for example, are available for only a few hundred dollars, easily establishes the plausibility of the alleged market. This factual allegation satisfies any requirement that the Jacobs allege facts relating to cross-elasticity of demand.[5]

Defendants' contention, therefore, that Plaintiffs included no factual allegations regarding substitutability, (*see* Mot. at 5), is simply wrong. The Jacobs' additional factual allegations on price and product characteristics strongly suggest that consumers do not view cheaper run-of-the-mill innerspring mattresses as ready substitutes for visco-elastic foam mattresses, any more than they might view even cheaper sleep products, such as futons, cots, or sleeping bags, as substitutes. Such allegations are more than sufficient, under any standard, to satisfy an obligation to allege a relevant product market.

---

[5] The Eleventh Circuit, quoting the Supreme Court, has described cross-elasticity of demand as it relates to a relevant market definition: "'The circle must be drawn narrowly to exclude any other product to which, within reasonable variations in price, only a limited number of buyers will turn; in technical terms, products whose "cross elasticities of demand" are small.'" *United States v. Englehard Corp.*, 126 F.3d 1302, 1305 (quoting *Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 612, n.31 (1953)). It is simply not reasonable to believe, much less to assume as Defendants apparently do, that a 10% increase or decrease in the price of a $500 innerspring mattress would affect the demand for visco-elastic foam mattresses costing in the thousands of dollars.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss should be

denied.

Dated: <u>July 27, 2007</u>                     Respectfully Submitted,


_____/s/ Craig G. Harley_____

Philip D. Bartz                        Martin D. Chitwood
Cameron Cohick                         Craig G. Harley
Donna M. Donlon                        James M. Wilson, Jr.
Stephen M. Lastelic                    CHITWOOD HARLEY HARNES LLP
MCKENNA LONG & ALDRIDGE LLP            2300 Promenade II
1900 K Street, N.W.                    1230 Peachtree Street, N.E.
Washington, D.C. 20006                 Atlanta, Georgia 30309
Phone:  (202) 496-7500                 Phone:  (404) 873-3900
Fax:  (202) 496-7756                   Fax:  (404) 876-4476

                                       Robert K. Finnell
                                       THE FINNELL FIRM
                                       One West Fourth Street
                                       Suite 200
                                       Rome, GA  30167
                                       Phone:  (706) 235-7272
                                       Fax:  (706) 235-9461


                                       COUNSEL FOR PLAINTIFFS

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of

Georgia, counsel for Plaintiffs certifies that PLAINTIFFS' OPPOSITION TO

DEFENDANTS' MOTION TO DISMISS COUNTS I & III OF PLAINTIFFS'

COMPLAINT was prepared in a font and point selection approved by the Count

and authorized in Local Rule 5.1.

 

                                          /s/ Craig G. Harley
                                 Martin D. Chitwood
Craig G. Harley
James M. Wilson, Jr.
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone:  (404) 873-3900
Fax:  (404) 876-4476

Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing PLAINTIFFS' OPPOSITION

TO DEFENDANTS' MOTION TO DISMISS COUNTS I & III OF PLAINTIFFS'

COMPLAINT was served via the Court's Electronic Filing System this 27th day of

July, 2007 on the following counsel of record.

Jeffrey S. Cashdan
Catherine M. O'Neil
Christine A. Hopkinson
Jonathan R. Chally
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5139


　　　　/s/ Craig G. Harley
Martin D. Chitwood
Craig G. Harley
James M. Wilson, Jr.
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Phone:  (404) 873-3900
Fax:  (404) 876-4476

Counsel for Plaintiffs